**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MONTERIAL WESLEY,

    Defendant - Appellant.

No. 22-3066

———————————————————

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:07-CR-20168-JWL-2)**

———————————————————

Kayla Gassmann, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Kansas City, Kansas, for Plaintiff-Appellee.

Jared S. Maag, Assistant United States Attorney (Duston J. Slinkard, United States Attorney, District of Kansas, and James A. Brown, Assistant United States Attorney, Chief, Appellate Division, with him on the brief), Office of the United States Attorney, Topeka, Kansas, for Defendant-Appellant.

———————————————————

Before **TYMKOVICH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

———————————————————

**TYMKOVICH**, Circuit Judge.

———————————————————

    A federal jury convicted defendant Monterial Wesley of drug trafficking. In a

post-conviction motion, Wesley alleged his prosecutor suborned perjury about the

drug quantities attributable to him, in turn increasing his sentencing exposure. But, rather than asking the district court to vacate his sentence under 28 U.S.C. § 2255, he asked for a sentence reduction under the compassionate release statute, which permits a sentencing court to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

Wesley's motion asserted various grounds for finding extraordinary and compelling reasons in his case, including the alleged prosecutorial misconduct. The district court concluded that the claim of prosecutorial misconduct must be interpreted as a challenge to the constitutionality of his conviction and sentence, which can only be brought under § 2255. Because Wesley had previously brought a § 2255 motion attacking the same judgment, and because this court had not authorized him to file another one, the district court dismissed that portion of Wesley's motion for lack of jurisdiction. *See United States v. Harper*, 545 F.3d 1230, 1232 (10th Cir. 2008) ("In order to file a second or . . . successive § 2255 motion, a petitioner must first move the court of appeals for an order authorizing the district court to hear the motion."). As to the remaining grounds for relief, the district court found they did not justify a sentence reduction.

On appeal, Wesley challenges the district court's jurisdictional dismissal.[1] He has not moved for a certificate of appealability (COA), but our case law requires one

---

[1] He has not appealed the portion of the district court's order denying relief on the merits, but the upshot of this appeal, if successful for Wesley, would be vacatur of the district court's order and remand for reconsideration based on all asserted "extraordinary and compelling reasons," including alleged prosecutorial misconduct.

2

for this appeal to proceed. *See id.* at 1233 ("[T]he district court's dismissal of an unauthorized § 2255 motion is a 'final order in a proceeding under section 2255' such that § 2253 requires petitioner to obtain a COA before he or she may appeal."). "This in turn requires us first to consider whether jurists of reason would find debatable the district court's decision to construe [Wesley's compassionate release] motion as a motion to vacate, set aside, or correct his sentence pursuant to § 2255." *Id.* (internal quotation marks and ellipsis omitted).

We find the question debatable among jurists of reason, so we grant a COA. On the merits, however, we agree with the district court that Wesley's motion included a successive § 2255 claim because it attacked the validity of his sentence. Accordingly, we affirm the district court's jurisdictional dismissal.

## I.  Background

A grand jury indicted Wesley on twelve counts relating to a conspiracy to distribute cocaine and cocaine base. After the court impaneled the jury but before the parties presented any evidence, Wesley pled guilty to four counts of the indictment without the benefit of a plea agreement. He went to trial on the eight other counts, and the jury subsequently convicted him of two more drug-related counts.

The district court sentenced Wesley to thirty years' imprisonment, which was within the Guidelines-recommended range based on the quantity of drugs attributed to him. Specifically, the court found that Wesley was accountable for more than 150 kilograms of cocaine. Few drugs were entered into evidence, so information about the type and quantity of drugs involved in the conspiracy rested almost entirely on

3

cooperating government witnesses.  The court particularly relied on the trial testimony and sentencing-hearing testimony of two witnesses the court found credible, Thomas Humphrey and Cruz Santa-Anna.

Wesley unsuccessfully requested relief three times: on direct appeal, through a § 2255 motion, and in a pandemic-related motion for compassionate release.  Then, in December 2021, Wesley filed a second compassionate release motion.  He asserted the district court should re-sentence him to fifteen years (about one year more than what he had already served) based on the combined effect of three considerations: (1) the prosecutor in his case solicited false testimony about drug quantities, on which the district court relied when calculating his Guidelines range; (2) his choice to go to trial resulted in a much longer sentence as compared to co-defendants who pleaded guilty; and (3) his sentence was excessive as compared to more culpable co-conspirators.

The bulk of Wesley's motion focused on the prosecutor's alleged misconduct. His theory depended on showing that the two witnesses on whom the district court relied in determining the drug quantity—Humphrey and Santa-Anna—knowingly testified to more drugs than were actually involved, and they did so because the prosecutor convinced them to.  He did not have evidence directly from Humphrey or Santa-Anna, but he did present statements (some of them sworn) from others who testified, or who were asked to testify, at his trial.  Specifically:

- One witness who testified against Wesley now says he lied about the nature of his dealings with Wesley.  The witness testified at trial that he sold cocaine to Wesley when in fact he sold only marijuana.  The witness asserts that the

4

prosecutor knew his testimony was false, but wanted him to testify that he sold cocaine to Wesley. The witness also states that the prosecutor asked him to "add weight" to the drug quantities in his trial testimony, R., Vol. I at 513, ¶ 5 (internal quotation marks omitted), although it's not clear from his statement if he followed that request.

- Another witness who testified against Wesley was pressured by the prosecutor "to make the drug weight to be more than what it really was," but he refused to do so. *Id.* at 529.

- A witness who did not testify at trial claims the prosecutor asked him to testify to buying more cocaine from Wesley than he did.

- All three witnesses recall talking with each other at the county jail, realizing they were there to testify in the same case, and discussing the prosecutor's similar tactics.

Wesley said this conduct provides reason to believe the prosecutor took a similar approach with other witnesses, such as Humphrey and Santa-Anna. Thus, Wesley believed he could show they testified falsely, in turn affecting his sentence.

Wesley further supported his motion with allegations that the prosecutor engaged in misconduct or untruthfulness in other cases, including five examples of misconduct or alleged misconduct by the same prosecutor in other cases. Given all this, Wesley asserted that he had been convicted and sentenced in "an unconstitutional proceeding." R., Vol. I at 412. He suggested an evidentiary hearing would be appropriate because "[t]he gravity and character of the prosecutorial misconduct allegations warrant further inquiry." *Id.* at 394.

As noted, the district court held that the allegations regarding prosecutorial misconduct amounted to an unauthorized successive § 2255 motion, so the court dismissed that portion of Wesley's motion for lack of jurisdiction. The district court

denied relief on the two other asserted bases for compassionate release. Wesley now appeals from the court's refusal to consider the asserted prosecutorial misconduct alongside the other asserted grounds for relief.

## II. Analysis

If Wesley's allegations against the prosecutor are true, her conduct would violate the Fifth Amendment's due process clause. *See Giglio v. United States*, 405 U.S. 150, 153–54 (1972). This is the sort of claim the court normally sees in a § 2255 context. If a federal prisoner "claim[s] the right to be released upon the ground that [his] sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack," that section allows him to "move the court which imposed the sentence to vacate, set aside or correct the sentence." § 2255(a). But the right to file a § 2255 motion does not last forever. It must be brought within one year of certain triggering events, such as the conviction becoming final, or the discovery of supporting evidence. § 2255(f). And if the prisoner has previously brought a § 2255 motion, any later § 2255 motion attacking the same conviction is limited to claims based on

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h).

6

Wesley insists he is not invoking § 2255. He asserts that the evidence of prosecutorial misconduct supports a sentence reduction under the compassionate release statute, without regard to whether the alleged misconduct is also a constitutional violation that might justify § 2255 relief. The advantage of this approach is that he can raise the basis for what would otherwise be a § 2255 claim, yet without the restrictions imposed by § 2255. As we discuss below, we disagree that § 3582 can be used to circumvent the procedural and substantive requirements of § 2255.

## A.  Statutory and Procedural Background

A prisoner must normally use § 2255 to challenge a conviction and sentence outside a direct appeal. We will begin, therefore, by explaining Wesley's resort to the compassionate release statute instead of § 2255.

### 1.  The Compassionate Release Statute

Congress enacted the original version of the compassionate release statute, 18 U.S.C. § 3582(c)(1), as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, tit. II, ch. II, § 212(a)(2), 98 Stat 1837. "[U]pon motion of the Director of the Bureau of Prisons," the statute permitted a sentencing court to reduce a prisoner's sentence upon three conditions: (1) the existence of "extraordinary and compelling reasons"; (2) "consisten[cy] with applicable policy statements issued by the Sentencing Commission"; and (3) "consider[ation of] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* The only limit Congress explicitly put on "extraordinary and compelling reasons" was a directive

7

that the Sentencing Commission's explanatory policy statements could not designate "[r]ehabilitation of the defendant alone [as] an extraordinary and compelling reason." 28 U.S.C. § 994(t).

The Sentencing Commission did not issue a relevant policy statement until 2006. That policy statement began with language mimicking the statute (and which would turn out to be significant in the context of later developments): "Upon motion of the Director of the Bureau of Prisons . . . ." U.S.S.G. § 1B1.13 (2006). And the original policy statement, without further guidance, only identified as an extraordinary and compelling reason "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons." *Id.* cmt. n.1(A).

By 2018, the Sentencing Commission had more fully fleshed out that standard to include, for example, terminal illness or the death of the caregiver for the defendant's minor children. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(i), (C)(i) (2018). But the policy statement still began with the words of the statute, "Upon motion of the Director of the Bureau of Prisons . . . ." *See id.*, main text.

The month following the effective date of the 2018 Guidelines, Congress passed the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018). Among many other things, the First Step Act amended the compassionate release statute to permit prisoners to bring motions on their own behalf if they ask the BOP to bring a motion and it does not respond within thirty days. *See id.*, tit. VI, § 603(b)(1), 132 Stat. at 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)).

Given this authorization, prisoners understandably began bringing compassionate release motions on their own behalf. At first, some district courts continued to apply the Sentencing Commission's 2018 policy statement (§ 1B1.13) when adjudicating these motions. *See, e.g.*, *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021) (describing such an order). But others reasoned that the 2018 policy statement, by its own terms, applies only to motions brought by the BOP. *See, e.g.*, *United States v. Maumau*, 993 F.3d 821, 828 (10th Cir. 2021) (describing such an order).

In *Maumau*, we went further and held

> that Congress intended to afford district courts with discretion, in carrying out the first part of the statutory test in § 3582(c)(1)(A)(i), to independently determine the existence of "extraordinary and compelling reasons," and for that discretion to be circumscribed under the second part of the statutory test by requiring district courts to find that a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* at 832. But because the Sentencing Commission had never had enough voting members to form a quorum since enactment of the First Step Act (a situation that persisted until August 2022), no policy statement existed to constrain the district court's evaluation of extraordinary and compelling reasons. *Id.* at 836.

Wesley interprets *Maumau* to stand for the proposition that "extraordinary and compelling reasons" is limitless, subject only to the district court's discretion. *See* Aplt. Opening Br. at 20 ("Under this open-ended statutory language, district courts are empowered to consider ***any*** extraordinary and compelling reason for release that a

defendant might raise." (internal quotation marks omitted)). Thus, "extraordinary and compelling reasons" could include the sorts of attacks on a conviction or sentence that prisoners normally bring through § 2255 motions—yet not subject to any of the statutory restraints imposed by § 2255, such as timing, the content of the motion, and the grounds on which one can bring additional motions.

But in *Maumau*, whether "extraordinary and compelling reasons" can include matters that, if true, would demonstrate the invalidity of the conviction or sentence, was not before this court.[2]

### 2. Wesley's Motion for Compassionate Release

Wesley has not yet asserted the alleged prosecutorial misconduct in a motion for authorization under § 2255(h). Instead, he has insisted that compassionate release and § 2255 are independent forms of relief, so it does not matter if he could have brought his claim through § 2255. *See* Aplt. Opening Br. at 45–46 ("Whether a particular extraordinary and compelling reason could be repackaged as a constitutional claim in a § 2255 petition has nothing to do with a motion for a discretionary reduction under § 3582(c)(1)(A)(i)."). Notably, at oral argument Wesley's counsel asserted the district court motion should not have been treated as a § 2255 motion because it could not have satisfied § 2255(h). Oral Argument at 32:11. Specifically, counsel pointed to § 2255(h)(1)'s requirement that successive

---

[2]  In unpublished decisions, this court has consistently ruled against Wesley's position. *See, e.g.*, *United States v. Mata-Soto*, 861 F. App'x 251, 255 (10th Cir. 2021).

motions based on new evidence must put the case in such a new light that "no reasonable factfinder would have found the movant guilty of the offense." Counsel says Wesley is challenging only his sentence, not his guilt, so a motion for authorization under § 2255(h)(1) based on prosecutorial misconduct was not available.[3] Regardless, Wesley does not claim his presumed inability to satisfy § 2255(h)(1) should be accepted as a reason to deem his circumstances extraordinary and compelling for purposes of compassionate release. Rather, as noted, he believes this court has already held that "extraordinary and compelling reasons" is limitless. Thus, from his perspective, inability to satisfy § 2255(h)(1) is irrelevant. Likewise irrelevant is the choice to limit his attack to the sentence only. Under his interpretation of the compassionate release statute, he *could* permissibly claim that some of his convictions are invalid, but he has chosen not to do so.

### B. Does § 2255 Control When a Prisoner Asserts an Argument Attacking His Conviction or Sentence?

To answer this question, we "must examine the disputed language in context, not in isolation," looking both to the "the language and design of the statute as a whole." *True Oil Co. v. Comm'r*, 170 F.3d 1294, 1299 (10th Cir. 1999) (internal quotation marks omitted). And we must keep in mind the canon of statutory

---

[3] We have not yet held that "guilty of the offense" in § 2255(h)(1) excludes arguments attacking the length of the sentence only. Other courts have held as much. *See, e.g.*, *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997).

11

construction that specific controls over general.[4] "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). "What counts for application of the general/specific canon is not the *nature* of the provisions' prescriptions but their *scope*." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 648 (2012).

Here, the scope of § 2255 is more specific, indeed, directly targeted at the claims that Wesley is making. In Wesley's view, a compassionate release motion could include the sorts of claims normally raised in a § 2255 motion, but there is no argument that a § 2255 motion can include the sorts of claims raised in a compassionate release motion (*e.g.*, rehabilitation, medical challenges, etc.). Similarly, the compassionate release statute says nothing about the timing of such motions, or whether a prisoner can bring them serially, whereas § 2255 places explicit restrictions on both. Thus, looking at the two statutes in context, § 2255 is presumptively the vehicle by which federal prisoners must raise challenges to their convictions or sentences.

"Of course the general/specific canon is not an absolute rule, but is merely a strong indication of statutory meaning that can be overcome by textual indications that point in the other direction." *RadLAX*, 566 U.S. at 646–47. Wesley offers no such textual indications. In our view, moreover, all indications point in the other

---

[4] At oral argument, counsel for Wesley claimed the government never briefed the general/specific question. Counsel is incorrect. *See* Resp. Br. at 14–16.

direction, especially when one looks at the sort of system that would result from the ability to use the compassionate release statute to assert errors in a conviction or sentence.

*First*, Congress required district courts considering compassionate release motions to ensure that any sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  If Wesley's position is correct, this means Congress authorized use of the compassionate-release vehicle to raise errors in the conviction or sentence and then delegated to the Sentencing Commission the authority to revoke that use of compassionate release via a policy statement.  Wesley gives us no reason to believe that Congress would grant this authority—effectively, the authority to decide whether federal postconviction challenges must proceed through § 2255 or not—to an administrative agency.  Nor can we find anything from the Sentencing Commission claiming such authority.  *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (noting that Congress does not "hide elephants in mouseholes").

*Second*, a prisoner may not bring a motion on his own behalf without first asking the BOP to bring one.  The benefits of an exhaustion requirement such as this include allowing the agency to "apply its special expertise" and to "produce a useful record for subsequent judicial consideration."  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds*, Prison Litigation Reform Act of 1995, 110 Stat. 1321–71, as amended, 42 U.S.C. § 1997e et seq., *as recognized in Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006).  The BOP undoubtedly has expertise

in, for example, evaluating prisoner behavior and prisoners' medical needs, and it can produce a useful record on those topics. The BOP has no expertise in evaluating alleged trial errors. Rather, federal courts acting under § 2255 have the relevant expertise and mechanisms to evaluate claims of error.

*Third*, Wesley asserts that compassionate release and § 2255 can harmoniously coexist because "ultimate relief [in a compassionate release proceeding] is highly individualized and always remains discretionary," in contrast to "a § 2255 proceeding, [in which] a court does not have discretion to refuse to grant relief." Aplt. Opening Br. at 37, 38. Thus, under the system for which Wesley advocates, a district court has discretion to deny relief even if the prisoner proves an error or defect of constitutional magnitude. It is hard to imagine a court denying relief to such an error. Yet this incongruous outcome allowed by Wesley's interpretation of § 3582 as compared to § 2255 seems to be precisely the sort of thing for which we would expect to see a "clear intention," *Morton*, 417 U.S. at 550, yet Wesley offers none.

*Fourth*, the compassionate release statute requires the district court to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

14

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [by the Sentencing Commission] . . . .
>
> (5) any pertinent policy statement [issued by the Sentencing Commission] . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Arguably, none of these factors applies to someone wrongfully convicted and sentenced. There is no indication Congress intended to create the possibility of a sentencing proceeding in which all § 3553(a) factors are irrelevant.

Even if the situation were more like Wesley's, where he claims an unlawfully long prison term (rather than wrongful conviction), highly unusual results might follow. "[C]onduct since [a defendant's] initial sentencing constitutes a critical part of the 'history and characteristics' of a defendant that Congress intended sentencing courts to consider [in any re-sentencing proceedings]." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (quoting § 3553(a)(1)). Thus, a district court considering a

15

compassionate release motion challenging only the length of the sentence could conclude that a defendant's poor behavior in prison shows his sentence remains appropriate, even if he has overserved the maximum sentence he could have received but for error.

*Fifth*, the most a district court can do for a defendant who merits relief under § 3582(c)(1)(A)(i) is re-sentence him to time served, thereby releasing him. But there is still a criminal judgment against him—it will remain on his record, potentially influencing the rest of his life. Again, as compared to the more-specific remedy in § 2255 (through which the district court can vacate the conviction), we would expect a clear intent from Congress that it intended the compassionate release statute to preserve the trailing consequences of a criminal sentence, even for those who were convicted or sentenced erroneously.

For all these reasons, we hold that § 2255 applies to Wesley's claims.[5]

### C. Other Circuits

Our holding is consistent with holdings or considered dicta from the Second, Fourth, Sixth, Seventh, Eighth, and D.C. Circuits—the majority of circuits to have

---

[5] The Sixth Circuit offers another interpretive insight. When Congress enacted the First Step Act, it did not touch the "extraordinary and compelling reasons" standard. Thus, Congress is presumed to carry forward the Sentencing Commission's interpretation of that phrase, which consistently focused on factors such as the prisoner's health, age, and family-caretaking responsibilities. *See United States v. McCall*, 56 F.4th 1048, 1059–60 (6th Cir. 2022) (en banc). In other words, there is a fair argument that "extraordinary and compelling reasons," by its own terms, excludes matters that stray too far from the core established by the Sentencing Commission, including assertions that call into doubt the validity of the conviction or sentence.

issued a published decision on this issue.  *See United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022); *United States v. Hunter*, 12 F.4th 555, 562, 566–68 (6th Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1200–06 (D.C. Cir. 2022).

Nonetheless, Wesley points to a First Circuit case, which takes a different view.  In *United States v. Trenkler*, 47 F.4th 42, 48 (1st Cir. 2022), the court held that, save for rehabilitation alone, district courts may consider literally anything, including errors normally raised through § 2255, when deciding whether extraordinary and compelling reasons exist.  *Trenkler* says its holding is dictated by the statute's plain language, *see id.* at 47–48, but we have already explained why this view cannot prevail in light of § 2255's more-specific focus.

Furthermore, *Trenkler* actually departs from the plain language of the compassionate release statute.  It says that "correct application of the 'extraordinary and compelling' standard for compassionate release naturally precludes classic post-conviction arguments, *without more*, from carrying such motions to success." *Id.* at 48 (emphasis added).  But it does not explain where it finds this limitation in the statute's text.  If a defendant can prove, say, the prosecutor framed him for a crime he did not commit, we do not see any reason in the text of the statute requiring the defendant to prove something more to merit relief.  Indeed, this is precisely where context matters.  Congress designed § 2255 to address that sort of claim, and to provide complete relief if appropriate.

The facts and disposition of *Trenkler* illustrate well the textual difficulties we have been pointing out. In that case, no one disputed that the defendant erroneously received a life sentence. And, as described, the First Circuit held that the district court could properly consider that error, among other factors, when considering the defendant's compassionate release motion. In fact, that is essentially what the district court had done, but the First Circuit was unsure if the district court had fully weighed all the relevant considerations together, so it vacated and remanded for further proceedings. In doing so, it said it "express[ed] no view as to what should happen on remand." *Id.* at 51. In other words, despite universal agreement that the defendant was serving an unlawful sentence, the First Circuit remanded to ensure that the district court would take "a holistic approach when reviewing Trenkler's proposed reasons [for re-sentencing]," *id.* at 50, potentially including denial of relief. Adhering to § 2255 avoids such unusual results.

### D. The Concepcion Decision

Wesley also points to the Supreme Court's recent decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022). *Concepcion* involved a part of the First Step Act permitting district courts to re-sentence certain defendants convicted of crack cocaine offenses. The basic question was the scope of information the district court could consider in those re-sentencing proceedings. Specifically, could district courts consider "intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison)"? *Id.* at 2396. Or were they instead required to assume the facts as they were at the original sentencing, modified only by

18

the changes Congress later enacted to reduce the severity of crack cocaine sentences? *See id.* at 2397–98.

The Supreme Court held that district courts could consider intervening changes of law and fact. In doing so, it employed very broad language: "It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Id.* at 2396. Nothing in the First Step Act limited that discretion when re-sentencing eligible crack cocaine offenders, so district courts were not limited to taking account solely of the change in law.

A compassionate release proceeding is *not* a re-sentencing proceeding under the First Step Act—again, the only thing the First Step Act changed about compassionate release was to authorize prisoners to bring their own motions. But a compassionate release proceeding *is* a proceeding to "decid[e] whether, and to what extent, to modify a sentence." *Id.* Thus, in Wesley's view, the district court cannot be restrained from considering any information the defendant puts before it, including alleged errors in the conviction or sentence.

The important distinction between this case and *Concepcion* is that there was no doubt the district court in *Concepcion* was applying the correct statute. The parties only disputed its interpretation. But Wesley raises the question *Concepcion* never had to answer—which is the correct statute for this kind of claim. We therefore find *Concepcion* inapplicable.

19

### E. Wesley's Appeal to Discretion

Wesley next points to our statement that "[i]t is the relief sought, not [the] pleading's title, that determines whether the pleading is a § 2255 motion," *United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006). He insists that compassionate release—which is discretionary, and which can lead, at most, to a reduced sentence—was the only "relief sought," in contrast to claiming a right to be released under § 2255. So, following *Nelson*, he says the district court should have treated his motion as a genuine compassionate release motion.

We disagree. Our statement in *Nelson* regarding "relief sought" does not establish a pleading exercise only. When a federal prisoner asserts a claim that, if true, would mean "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," § 2255(a), the prisoner is bringing a claim governed by § 2255. He cannot avoid this rule by insisting he requests relief purely as an exercise of discretion rather than entitlement.[6] *Cf. Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (discussing "the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of

---

[6] This is why Wesley's presumed inability to bring a successful motion under § 2255(h)(1), *see supra* Part II.A.2, makes no difference here. If a prisoner claims his sentence "was imposed in violation of the Constitution or laws of the United States, [etc.]," § 2255(a), the district court must apply § 2255, potentially including its restrictions on the kinds of claims that are cognizable after the prisoner has filed an earlier § 2255 motion attacking the same judgment.

their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody").

### F. Appropriate Procedure in the District Courts

A final question remains. If a district court receives a compassionate release motion that comprises or includes a claim governed by § 2255, should the court (1) treat it as a compassionate release motion, although with a flawed (or partially flawed) basis; or (2) treat the part governed by § 2255 as if explicitly brought under § 2255 and handle it accordingly (including dismissal for lack of jurisdiction if appropriate)? Here, the district court took the second approach, but other courts in this circuit have occasionally taken the first, *see Mata-Soto*, 861 F. App'x at 253–55.

We conclude the district court's approach in this case was correct. In all other contexts in which defendants have (following direct appeal) attempted to raise § 2255-like claims outside of § 2255, we have held that such a motion, however captioned or argued, must be treated as a § 2255 motion. *See, e.g.*, *United States v. Williams*, 790 F.3d 1059, 1066–68 (10th Cir. 2015) (motion to withdraw guilty plea); *United States v. Baker*, 718 F.3d 1204, 1208 (10th Cir. 2013) (Federal Rule of Civil Procedure 60(d)(3)); *Nelson*, 465 F.3d at 1148–49 (10th Cir. 2006) (Federal Rule of Civil Procedure 15); *United States v. Torres*, 282 F.3d 1241, 1245–46 (10th Cir. 2002) (writs of coram nobis and audita querela); *United States v. Gieswein*, 814 F. App'x 428, 429–30 (10th Cir. 2020) (Federal Rule of Criminal Procedure 52(b)); *United States v. Beadles*, 655 F. App'x 706, 707–08 (10th Cir. 2016) (Federal

21

Rule of Criminal Procedure 33).  The parties give us no reason to treat a motion filed under § 3582(c)(1)(A)(i) differently.  Thus, as to the portion of Wesley's motion arguing a defect in his sentence based on prosecutorial misconduct, the district court correctly refused to exercise jurisdiction.

## III. Conclusion

We hold that an 18 U.S.C. § 3582(c)(1)(A)(i) motion may not be based on claims specifically governed by 28 U.S.C. § 2255.  We therefore affirm the district court.