UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2023

(Argued: December 4, 2023     Decided: June 11, 2024)

Docket No. 22-3122-cr

_____

UNITED STATES OF AMERICA,
*Appellant*,

v.

JOE FERNANDEZ,
*Defendant-Appellee*,


MANUEL ALADINO SUERO, JOSE GERMAN RODRIGUEZ-MORA, also known as
GORDO, LUIS RIVERA, ALBERTO REYES, also known as ZAC, PATRICK H. DARGE,
*Defendants.*


_____

Before:      SACK, LOHIER, AND KAHN, *Circuit Judges*.

The government appeals from a judgment entered on November 17, 2022, in which the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) granted federal prisoner Joe Fernandez's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), reduced his sentence to time served, and ordered his release from custody.  The district court based its decision on two grounds: Fernandez's possible innocence in light of the questionable credibility of the government's key witness, and the fact that Fernandez received a far longer sentence than his co-defendants.  On appeal, the government argues that the district court abused its discretion because potential innocence is never a permissible "extraordinary and compelling reason[]" for reduction of a sentence within the meaning of 18 U.S.C. § 3582(c)(1)(A), and

Fernandez's sentencing disparity is not an "extraordinary and compelling reason[]" for a sentence reduction on the facts of this case. For the reasons set forth below, we agree, and therefore

REVERSE the judgment of the district court.

> DAVID ABRAMOWICZ (Christopher D. Brumwell, Won S. Shin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellant*;
>
> BENJAMIN GRUENSTEIN, Cravath, Swaine & Moore LLP, New York, NY, *for Appellee.*

SACK, *Circuit Judge*:

This appeal raises questions as to which claims and arguments a district court is permitted to consider as "extraordinary and compelling reasons" in support of a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as a motion for "compassionate release." Defendant-Appellee Joe Fernandez, then imprisoned in a federal penitentiary, filed this compassionate-release motion seeking a reduction of the mandatory life sentence he was serving for his conviction of murder for hire, in violation of 18 U.S.C. § 1958.

Patrick Darge had hired Fernandez as a "backup shooter" in a scheme to murder two Mexican drug cartel members who had come to New York City to collect payment for more than 270 kilograms of cocaine the cartel had sold to local drug trafficker Jeffrey Minaya. While Darge (and several other co-defendants implicated in the scheme) pleaded guilty to various narcotics, firearms, and murder charges and cooperated with the government, Fernandez went to trial and was convicted.

In 2021, Fernandez filed the instant motion for compassionate release in the district court arguing, in relevant part, that two "extraordinary and compelling reasons" warranted his release: (1) his potential innocence in light of the questionable credibility of Darge, the government's key witness at trial, and (2) the significantly lower sentences imposed on Fernandez's co-defendants. The United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) granted the motion on these grounds, reduced Fernandez's sentence to time served, and ordered his release.

The government appealed, arguing that the district court abused its discretion because potential innocence is never a permissible "extraordinary and compelling reason[]" for a sentence reduction within the meaning of 18 U.S.C. §

3582(c)(1)(A), and that Fernandez's sentencing disparity is not an "extraordinary and compelling reason[]" for a sentence reduction on the facts of this case. We agree with the government that a compassionate release motion is not the proper vehicle for litigating the issues Fernandez has raised, irrespective of whether his mandatory life sentence is unjust. We therefore reverse the judgment of the district court.

## BACKGROUND

### I. Factual Background

A. <u>Fernandez's Offense Conduct</u>

It was established at Fernandez's trial that, in early 2000, Arturo Cuellar and Idelfonso Vivero Flores, two members of a Mexican drug cartel, traveled to New York City to collect payment for 274 kilograms of cocaine their cartel had delivered to Minaya, the leader of a New York drug ring. Minaya, who owed the cartel approximately $6.5 million for the drugs, decided not to pay Cuellar and Flores, and instead hired Patrick Darge to kill them. Darge, in turn, hired Fernandez as his backup shooter and Luis Rivera as the getaway car driver.

In the morning of February 22, 2000, Darge and Fernandez waited for their intended victims in a dark area of the lobby of 3235 Parkside Place, an apartment

4

building in the Bronx. Alberto Reyes, another participant in the scheme, ushered in Cuellar and Flores, called an elevator, gave the "sign" to Darge and Fernandez, and left. As Cuellar and Flores stood waiting for the elevator, Darge emerged from the shadows and shot Cuellar in the back of the head. Darge then turned to shoot Flores, but Darge's gun jammed. He ran out of the lobby to the getaway car, where Rivera was waiting. Fernandez, however, remained in the lobby and fired fourteen shots, nine of which hit either Cuellar or Flores. Having confirmed that both victims were dead, Fernandez returned to the getaway car and he, Darge, and Rivera fled the scene. Darge paid Fernandez $40,000 for his participation in the scheme.

On October 13, 2011, eleven years after the shooting, law enforcement officers came searching for Fernandez at an address in Woodbury, New York, but found only his wife there. That same day, Fernandez met with his cousins Christian Guzman and Alain Darge (Patrick Darge's brother) at Guzman's residence to consult Alain on what to do next. Five days later, on October 18, 2011, Fernandez surrendered to the police.

B.     Fernandez's Trial, Conviction, and Post-Trial Proceedings

On February 6, 2013, Fernandez was indicted on one count of participating

in a murder-for-hire conspiracy resulting in two deaths, in violation of 18 U.S.C. § 1958, and one count of aiding and abetting the use of a firearm to commit two murders during and in relation to a crime of violence (the murder-for-hire conspiracy in count one), in violation of 18 U.S.C. §§ 924(j)(1) and 2. Unlike Darge, Reyes, and Minaya, who were also charged but pleaded guilty,[1] Fernandez maintained his innocence and went to trial. The evidence included bullets and shell casings from the crime scene; photographs of the scene and relevant individuals; and phone records. The evidence also included testimony of four law enforcement officers (one of whom was a ballistics expert), one

---

[1] Darge pleaded guilty to one count of using a firearm in connection with a drug trafficking crime resulting in death, in violation of 18 U.S.C. § 924(j)(1); one count of murder in connection with a drug trafficking crime, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; another count of murder in connection with a drug trafficking crime, in violation of 21 U.S.C. § 848(e)(1)(A); and one count of murder for hire, in violation of 18 U.S.C. § 1958.

Reyes pleaded guilty to two counts of participation in murder in connection with a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 848(e); and two counts of conspiracy to use interstate commerce facilities in the commission of a murder for hire, in violation of 18 U.S.C. § 1958.

Minaya pleaded guilty to two counts of murder in connection with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A).

Rivera pleaded guilty to one count of conspiracy to distribute heroin, in violation of 21 U.S.C. § 841(b)(1)(C). The conduct underlying this guilty plea was separate from the murder-for-hire scheme in which Fernandez and Rivera participated, and it appears that Rivera was never convicted of any crimes relating to that conduct.

doctor from the Office of the Chief Medical Examiner, and six cooperating witnesses. The government's key cooperating witness was Darge, the only one attesting to first-hand knowledge of Fernandez's participation in the shooting.

On cross-examination, Darge admitted that, as a cooperating witness in a different case, he lied to the government, agents, and judge for his own personal benefit. Those lies related to (1) his involvement in two prior murders (including one at issue in this case), (2) his history of credit card fraud, (3) the extent to which he dealt drugs, (4) his brother Alain Darge's involvement in his drug dealing business, and (5) Alain Darge's history of "shooting people." Tr. at 405. Despite these admissions, the jury convicted Fernandez on both counts on March 7, 2013.

Fernandez thrice argued to the district court (twice in post-trial motions and once at his sentencing) that the evidence was insufficient to sustain his conviction because Darge's testimony was unreliable. Each time, the court rejected his argument.

On October 7, 2014, the district court sentenced Fernandez to a mandatory life sentence on the first count (participating in a murder-for-hire conspiracy resulting in two deaths, in violation of 18 U.S.C. § 1958), and a non-mandatory

life sentence, running consecutively on the second count (aiding and abetting the use of a firearm to commit two murders during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(j)(1) and 2).  Separately, the district court sentenced Darge to 30 years' imprisonment; Reyes (who brought the victims into the lobby and gave the sign to shoot) to 25 years; Minaya (the drug lord who ordered the murders) to 15 years; and Rivera (the getaway driver) to two years. *See supra* note 1.

Fernandez appealed his conviction, arguing again "that Darge's testimony was insufficient to sustain his conspiracy conviction because it was uncorroborated." *United States v. Fernandez*, 648 F. App'x 56, 60 (2d Cir. 2016) (summary order), *cert. denied*, 583 U.S. 925 (2017).  On May 2, 2016, this Court affirmed. *Id.*

Fernandez then pursued collateral challenges to his conviction and sentence, pressing claims other than his potential innocence.  On November 3, 2021, the district court vacated Fernandez's conviction for aiding and abetting the use of a firearm in connection with murder for hire in light of the Supreme Court's intervening ruling in *United States v. Davis*, 588 U.S. 445 (2019), holding, as relevant here, that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. *Id.* at

470. This left Fernandez to serve the remaining mandatory life sentence for his

murder-for-hire conviction. The court denied the other collateral challenges.

Fernandez appealed those denials, and this Court affirmed. *Fernandez v. United*

*States*, 757 F. App'x 52 (2d Cir. 2018) (summary order), *cert. denied*, 140 S. Ct. 337

(2019).

C. Fernandez's Motion for a Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

On November 30, 2021, Fernandez filed a *pro se* motion for compassionate

release under 18 U.S.C. § 3582(c)(1)(A), which was supplemented by counsel on

February 14, 2022. Fernandez argued that four extraordinary and compelling

reasons warranted a reduction of his sentence: (1) his potential innocence in light

of Patrick Darge's non-credible testimony, *see* Supp. App'x at 57 (asserting that

"there is a strong basis to question the correctness of the verdict"); (2) the

considerably lower sentences imposed on Darge, Reyes, Minaya, and Rivera; (3)

the harsh conditions of his confinement resulting from the COVID-19 pandemic;

and (4) his rehabilitation while incarcerated.

The district court rejected the third ground; it did not address the fourth.

Nonetheless, persuaded by Fernandez's assertion of his potential innocence and

sentencing disparity, the district court granted Fernandez's motion on November 17, 2022.

As to Fernandez's potential innocence, Judge Hellerstein explained that "[a]lthough there is factual support for the jury's verdict and the verdict has been affirmed, a certain disquiet remains." App'x at 164 (citation omitted). That "disquiet" over Fernandez's potential innocence arose from at least six considerations: (1) Patrick and Alain Darge had fled to the Dominican Republic immediately after the two murders while Fernandez had not; (2) in the eleven years between the murders and his arrest, Fernandez had earned an honest living and had no record of violence; (3) Patrick Darge, as a witness against Fernandez, had a motive to lie to the government and had done so in the past; (4) the trial evidence was inconsistent as to whether Darge fired the first shot and Fernandez fired the rest, or Fernandez fired the first shot and Darge the rest; (5) more effective cross-examination of Darge may have exposed his desire to protect his brother Alain as a motive to lie; and (6) the government had chosen not to charge the getaway car driver Rivera for his participation in the murder scheme, instead accepting his guilty plea for an unrelated narcotics charge.

As to the disparity between Fernandez's and his co-defendants' sentences,

the district court relied on *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), for the proposition that "the First Step Act enables [a district court] to consider this disparity as part of the extraordinary and compelling circumstances that justify a lower sentence for Fernandez." App'x at 165–66.

Based on those two grounds, and after determining that the factors set forth under 18 U.S.C. § 3553(a) counseled in favor of a reduction, the district court granted Fernandez's compassionate release motion, reduced his sentence to time served, and ordered his release.

On December 12, 2022, the government timely appealed. On January 4, 2023, this Court denied the government's motion to stay Fernandez's release pending this appeal.

**STANDARD OF REVIEW**

"We review the denial of a motion for compassionate release for abuse of discretion." *United States v. Amato*, 48 F.4th 61, 64 (2d Cir. 2022) (per curiam) (internal quotation marks omitted), *cert. denied sub nom. Orena v. United States*, 143 S. Ct. 1025 (2023) (internal quotation marks omitted). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a

decision that cannot be located within the range of permissible decisions."

*Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) (internal quotation marks

omitted).  Abuse-of-discretion review "incorporates de novo review with respect

to questions of statutory interpretation," *Amato*, 48 F.4th at 64–65 (internal

quotation marks omitted), and "the district court's interpretation of the scope of

§ 3582(c)(1)(A)" is such a question of statutory interpretation subject to *de novo*

review, *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022), *cert. denied*, 144

S. Ct. 1007 (2024).

<strong>DISCUSSION</strong>

**I.      Legal Standard**

"Pursuant to 18 U.S.C. § 3582(c)(1) as modified by the First Step Act, a

district court may reduce a term of imprisonment upon motion by a defendant."

*United States v. Halvon*, 26 F.4th 566, 568 (2d Cir. 2022) (per curiam) (citation

omitted).  "[Section] 3582(c)(1) permits a district court to reduce a term of

imprisonment if 'after considering the factors set forth in 18 U.S.C. § 3553(a) to

the extent that they are applicable, it finds that extraordinary and compelling

reasons warrant such a reduction.'"  *Id*. (quoting 18 U.S.C. § 3582(c)(1)(A)(i))

(alterations omitted).  District courts may "consider the full slate of extraordinary

and compelling reasons that an imprisoned person might bring before them."

*Brooker*, 976 F.3d at 237. The burden of showing that the circumstances warrant a sentence reduction is on the defendant. *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021).

## II.    Analysis

On this appeal, the government argues that the district court abused its discretion by impermissibly considering Fernandez's claims of his potential innocence and the disparity between his and his co-defendants' sentences as "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A). A potential-innocence claim challenges the validity of the underlying conviction, and a sentencing disparity claim challenges the validity of the sentence imposed. But the validity of a conviction or sentence can be challenged only on direct appeal or collateral review, which have specifically calibrated procedural limitations. *See, e.g.*, 28 U.S.C. § 2255. Permitting such challenges as cognizable "extraordinary and compelling reasons" on a motion for compassionate release would circumvent the procedural limitations of direct and collateral review, and, according to the government, risk scuttling that framework altogether.

In the alternative, the government argues that the district court abused its discretion because a sentencing disparity between a defendant who went to trial and co-defendants who pleaded guilty to other crimes and cooperated with the government are not "extraordinary and compelling reasons" under the plain meaning of section 3582(c)(1)(A)(i).[2]

A.    Fernandez's Sentencing Disparity Claim

Turning to Fernandez's sentencing-disparity claim first, we begin with a construction of the statutory language "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).[3]  Because Congress did not define those terms, we

---

[2] In deciding Fernandez's original appeal of his sentence, we noted by way of summary order that in sentencing a convicted defendant such as Fernandez, where "a district court does consider disparities among confederates, 'the weight to be given such disparities, like the weight to be given any § 3553(a) factor, is a matter firmly committed to the discretion of the sentencing judge and is beyond our appellate review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented.'"  *Fernandez*, 648 F. App'x at 60 (quoting *United States v. Florez*, 447 F.3d 145, 158 (2d Cir. 2006)).  The issue before us today, by contrast, is whether any disparity between Fernandez's sentence and those of his co-defendants may satisfy the "extraordinary and compelling" requirement posed by Fernandez's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

[3] The statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the [district] court, . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions

14

"consider the ordinary, common-sense meaning of the words," *United States v.*

*Dauray*, 215 F.3d 257, 260 (2d Cir. 2000), "at the time [it] enacted the statute," *New*

*Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (internal quotation marks omitted);

*see also Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015).

Our sister circuits have observed, and we agree, that an "extraordinary" reason is

"'most unusual,' 'far from common,' . . . 'having little or no precedent,'" *United*

*States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (quoting *United States v.*

*Hunter*, 12 F.4th 555, 562 (6th Cir. 2021)), "'beyond or out of the common order,'

'remarkable,' and synonymous with 'singular,'" *United States v. Escajeda*, 58 F.4th

184, 186 (5th Cir. 2023) (quoting *Webster's Second New Int'l Dictionary* 903 (1950)).

A "compelling" reason "is both powerful and convincing." *United States v.*

*Canales-Ramos*, 19 F.4th 561, 567 (1st Cir. 2021) (citing *Webster's Third New Int'l*

---

that does not exceed the unserved portion of the original term of imprisonment), after considering the [sentencing] factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction

> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

*Dictionary: Unabridged* 462 (1981)); *see also Hunter*, 12 F.4th at 562 ("'Compelling' mean[s] 'forcing, impelling, driving.'" (quoting *Webster's Third New Int'l Dictionary: Unabridged* 463 (1971))), *cert. denied*, 142 S. Ct. 2771 (2022).

Fernandez argues that under this Court's reasoning in *Brooker*, district courts have discretion to consider "any reason that fits within the ordinary meaning of 'extraordinary and compelling,'" Appellee Br. at 28—save for rehabilitation alone, *see* 28 U.S.C. § 994(t). Sentencing disparity claims, he argues, fall within that range of permissible reasons.

Under the circumstances of this case, Fernandez's sentencing disparity is not an "extraordinary and compelling reason[]" to reduce his sentence under the plain meaning of the statute. Fernandez concedes that, "[i]n contrast to all of his co-defendants," he did not plead guilty or cooperate with the government, but "maintained his innocence, proceeded to trial, and received a [mandatory] life sentence." Appellee Br. at 49. It is not "extraordinary" (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating. The Supreme Court has observed that our "system of pleas . . . . often results in individuals

who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial." *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012) (internal quotation marks omitted). And lower sentences for cooperating defendants are explicitly contemplated by the sentencing statute, *see* 18 U.S.C. § 3553(e), and the Sentencing Guidelines, *see* U.S.S.G. § 5K1.1. Such practices are hardly "'most unusual,' 'far from common,'" or with "'little or no precedent.'" *Jenkins*, 50 F.4th at 1197.

Nor is a disparity between Fernandez's sentence and those of his co-defendants a "compelling" reason to reduce a sentence. "Disparities between the sentences of coconspirators can exist for valid reasons, such as . . . the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008). This Court, too, has recognized that "a reasonable explanation" for a sentencing disparity was "readily apparent" where there were "varying degrees of culpability and cooperation between the various defendants," and where, unlike the defendant-appellant in that case, all co-defendants "cooperated and pled guilty." *United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006), *cert. denied*, 549

U.S. 1274 (2007); *see also United States v. Gahagen*, 44 F.4th 99, 113 (2d Cir. 2022) (same).

In sum, "[t]here is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government." *Hunter*, 12 F.4th at 572 (holding that the district court abused its discretion in granting a compassionate release motion based in part on the sentencing disparity between the movant and his co-defendant).[4]

---

[4] We cannot foreclose the possibility that significant sentencing disparities, even between a defendant who went to trial and a co-defendant who pleaded guilty and cooperated, might, in some unusual circumstances, warrant a finding of "extraordinary and compelling" reasons to grant a sentence reduction. The case at bar simply does not involve any such circumstances. Indeed, Judge Hellerstein implicitly acknowledged the legitimacy of the disparity between Fernandez's life sentence and his co-defendants' lower sentences by imposing a non-mandatory life sentence on Fernandez for the now vacated section-924(j) count. To be sure, Fernandez asserts that unusual circumstances justifying a finding of "extraordinary and compelling" reasons are present here in light of his possible innocence. But we reject that argument for the reasons articulated *infra* in Section III.B.

We therefore need not, and do not, resolve the parties' disagreement over whether a sentencing disparity claim categorically amounts to a challenge of the validity of a sentence, must therefore always be brought on direct or collateral review, and is therefore always barred on a motion for compassionate release. *Compare* Appellee Br. at 43 (Fernandez arguing that his sentencing disparity claim does not challenge the legal validity of his sentence, but contends simply that the disparity is "unjust" because it far exceeds that of his co-defendants), *with* Appellant Br. at 38 (arguing that Fernandez's sentencing disparity claim *is* an attack on the sentence's validity). Here, we simply assume without deciding that *Fernandez*'s sentencing disparity claim is not a challenge to the validity of his sentence, and conclude that Fernandez's claim cannot be an "extraordinary and compelling reason[]" to reduce his sentence under the plain meaning of the statutory terms.

B.    Fernandez's Potential-Innocence Claim

We next turn to Fernandez's potential-innocence claim. Like his sentencing disparity claim, Fernandez insists that, in light of *Brooker* and the broad ordinary meaning of the statutory terms "extraordinary and compelling," the district court was permitted to consider his potential-innocence claim as part of his compassionate release motion. The government counters that section 3582(c)(1)(A) is limited by 28 U.S.C. § 2255, the habeas statute pursuant to which federal prisoners can "move the court which imposed the sentence to vacate, set aside or correct the sentence" where the prisoner's "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). According to the government, the scope of section 2255 is more specific than that of section 3582(c)(1)(A), which means that all claims cognizable under section 2255 *must* be brought under section 2255. The government maintains that Fernandez's potential-innocence claim is such a claim falling under the ambit of section 2255. We agree.

Because "[r]epeal by implication is disfavored[,]" *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 89 (2d Cir. 2016), "a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment,"

unless there is a "clear intention otherwise," *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974); *see also United States v. Wesley*, 60 F.4th 1277, 1284 (10th Cir. 2023) (explaining that, when construing the scope of section 3582(c)(1)(A)'s "extraordinary and compelling reasons," "we must keep in mind the canon of statutory construction that specific controls over general"). "What counts for application of the general/specific canon is not the *nature* of the provisions' prescriptions but their *scope*." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 648 (2012) (emphasis in original).

We conclude that 28 U.S.C. § 2255 is more specific in scope than 18 U.S.C. § 3582(c)(1)(A). "[Section] 2255 places explicit restrictions on" the timing of a habeas petition and the permissibility of serial petitions. *Wesley*, 60 F.4th at 1284. Neither of these restrictions apply to a section 3582 motion, which an incarcerated defendant can file as soon as the defendant has exhausted his "administrative options" with the Bureau of Prisons, "or 30 days pass, 'whichever is earlier.'" *Brooker*, 976 F.3d at 236 (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also Escajeda*, 58 F.4th at 186–87 (concluding that section 2255's scope is more specific than that of section 3582(c)(1)(A)); *Hunter*, 12 F.4th at 566–67 (same); *Ferguson*, 55 F.4th at 270 (same). It stands to reason that "[i]f a

prisoner could avoid the strictures Congress imposed [in section 2255] by bringing their release-from-confinement claims under a different, more general, and more permissive statute, he obviously would." *Escajeda*, 58 F.4th at 187. If Congress had intended to permit defendants to circumvent the strictures of 28 U.S.C. § 2255 by making challenges to the validity of a conviction cognizable on a compassionate release motion, it would surely have said so. Absent such a clear declaration of intent, we conclude that since challenges to the validity of a conviction must be made under section 2255, they cannot qualify as "extraordinary and compelling reasons" under section 3582(c)(1)(A). Compassionate release is not a channel to habeas relief or an end run around the limitations of section 2255.

Indeed, we foreshadowed our conclusion today in *United States v. Amato* and *United States v. Jacques*. In *Amato*, we held that "arguments challenging the validity of an underlying conviction cannot be raised in a § 3582 motion as part of the § 3553(a) sentencing factors." 48 F.4th at 65. To be sure, the analysis of whether "extraordinary and compelling reasons" for a sentence reduction exist is separate from the question of whether the section 3553(a) sentencing factors

warrant a sentence reduction.  But *Amato* derived its conclusion from the

principle that

> [i]f a defendant contends his conviction by a federal court is invalid, Congress has provided a vehicle to raise such a challenge through a motion pursuant to 28 U.S.C. § 2255, which imposes particular procedural limitations.  A defendant cannot evade this collateral review structure by attacking the validity of his conviction through § 3582.

*Id.*  That reasoning applies here:  Challenging the validity of a conviction under

the extraordinary-and-compelling-reasons prong of section 3582 would permit a

defendant to "evade [the] collateral review structure" of section 2255, a result in

tension with *Amato*.

In *United States v. Jacques*, we concluded that attacks on the validity of the

defendant's conviction were not cognizable on a section 3582 motion for

compassionate release—either under the section 3553(a) prong or the

extraordinary-and-compelling-reasons prong.  *See* No. 20-3276, 2022 WL 894695,

at *2 (2d Cir. Mar. 28, 2022) (summary order).  There too we reasoned that

"[p]ermitting a [defendant] to make actual innocence arguments in this manner

would enable him to pursue habeas relief through a compassionate release

motion and thereby evade the procedural limitations on bringing habeas claims."

*Id.*  Fernandez contends that *Jacques* is a summary order and therefore not

binding on this Court. True enough, but that reasoning persuaded us in *Jacques*, and it persuades us now. Indeed, we have observed that "[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (internal quotation marks omitted).

Fernandez's reliance on *Brooker* is unavailing. While it is correct that district courts have the discretion "to consider the *full slate* of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," 976 F.3d at 237 (emphasis added), *Brooker* did not discuss or decide the scope of that "full slate." *See also Amato*, 48 F.4th at 66 ("Nothing in [*Brooker*] permits defendants to circumvent the procedural limitations of § 2255 by repackaging actual innocence arguments into the § 3553(a) factors."). And where, as here, the straightforward application of canons of statutory construction removes certain claims from that slate, a district court may not consider them.[5]

---

[5] Fernandez's reliance on *Concepcion v. United States*, 597 U.S. 481 (2022), is unavailing for the same reason. True, "[b]*y its terms*, [the First Step Act] does not prohibit district courts from considering any arguments in favor of, or against, sentence modification." *Id.* at 496 (emphasis added). But that has no bearing on whether a *separate, more specific statute* limits the range of permissible arguments. Section 2255 is such a statute.

Our conclusion today that challenges to the validity of a conviction are not cognizable as "extraordinary and compelling reasons" under section 3582(c)(1)(A) joins a near-unanimous consensus among our sister circuits. *See United States v. Holland*, No. 23-2166, 2023 WL 6249910, at *2 (3d Cir. Sept. 26, 2023) (summary order) (affirming denial of compassionate release motion because the defendant's arguments, "[a]lthough couched as arguments in support of compassionate release, . . . attack the legal validity of his convictions . . . , which is the heart of habeas corpus" (internal quotation marks omitted)); *Ferguson*, 55 F.4th at 270 (4th Cir.) ("Because § 2255 is the exclusive method of collaterally attacking a federal conviction . . . , a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements."); *Hunter*, 12 F.4th at 567–68 (6th Cir.) ("There is no 'clear intention' that Congress intended to allow prisoners to avoid the specific *habeas* restrictions by resorting to compassionate release. . . . Therefore, we will not read § 3582(c)(1)(A)'s general permission in a way that would swallow the more specific prohibition or permission for *habeas* relief." (internal quotation marks omitted)); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) ("Crandall cannot avoid the restrictions of the post-conviction relief statute [in his challenge

that his conviction was legally erroneous] by resorting to a request for compassionate release instead."), *cert. denied*, 142 S. Ct. 2781 (2022); *United States v. Lillard*, No. 20-30256, 2022 WL 2167795, at *1 (9th Cir. June 16, 2022) (summary order) ("Lillard's motion [for compassionate release] was actually a collateral challenge to his conviction and thus procedurally improper." (internal quotation marks omitted)); *Wesley*, 60 F.4th at 1284, 1289 (10th Cir.) (rejecting the assertion that "the compassionate release statute [could be used] to assert errors in a conviction or sentence" and "hold[ing] that an 18 U.S.C. § 3582(c)(1)(A)(i) motion may not be based on claims specifically governed by 28 U.S.C. § 2255"); *Jenkins*, 50 F.4th at 1202 (D.C. Cir.) (explaining that, because section 2255 "traditionally has been accepted as the specific instrument to obtain release from [unlawful] confinement[,] . . . an inmate may not rely on a generally worded statute to attack the lawfulness of his imprisonment, even if the terms of the statute literally apply" (internal quotation marks omitted)).

Only one circuit has stood against the weight of this authority. In *United States v. Trenkler*, the First Circuit held that section 3582's plain language permits a district court to consider any claim (other than rehabilitation alone) as a possibly extraordinary and compelling reason. 47 F.4th 42, 48 (1st Cir. 2022).

25

*Trenkler*, however, has been considered and rejected by other circuits on the ground that it "fail[ed] to grapple with the reality that addressing a defendant's argument about the validity of his conviction . . . [on] a compassionate release motion . . . would have the practical effect of correcting a purportedly illegal sentence, a remedy that is exclusively within the province of § 2255." *Ferguson*, 55 F.4th at 272; *see also Wesley*, 60 F.4th at 1286 (rejecting *Trenkler* because its view "cannot prevail in light of § 2255's more-specific focus"). We agree with *Ferguson* and *Wesley*.

In the alternative, Fernandez argues that even if challenges to the validity of a conviction must be brought on a section 2255 petition, his innocence claim is not barred here because it is not, in fact, an attack on the legal validity of his conviction. Rather, Fernandez argues that his life sentence is "unjust" in light of Patrick Darge's unreliable testimony, even if it does not taint Fernandez's conviction with legal error. Appellee Br. at 43.

Again, we disagree. "[N]o matter how an inmate characterizes his request for relief, the substance of that request controls." *Ferguson*, 55 F.4th at 270. Whether Fernandez couches his claims in terms of legal validity or "justness," he is, in substance, attacking his conviction. And "[i]f in substance [an inmate]

attacks his conviction . . ., his filing is subject to the rules set forth in § 2255." *Id.*[6] Otherwise, a defendant's artful presentation of his claims would allow him to circumvent the procedural requirements of direct and collateral review—precisely what we rejected in *Amato*, 48 F.4th at 65. *See also, e.g.*, *Wesley*, 60 F.4th at 1289; *Jenkins*, 50 F.4th at 1202; *Escajeda*, 58 F.4th at 187; *Hunter*, 12 F.4th at 566–67.

Finally, Fernandez argues that he could not have raised his potential-innocence claim on a section 2255 petition because such claims succeed only when coupled with a meritorious claim of constitutional error. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("[A] claim of 'actual innocence' . . . is [only] a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). Because he had no constitutional claim, Fernandez explains, he could not have raised his potential-innocence claim on habeas, which means it remains viable on the instant compassionate release motion. This argument fails, too. As Fernandez concedes, a potential-innocence argument would have been *cognizable* on a section 2255

---

[6] Fernandez also raised Darge's questionable credibility in two post-trial motions and at his sentencing. Each time, Judge Hellerstein rejected that argument. Fernandez then raised the argument again on direct appeal, and this Court, too, rejected it.

27

petition. The fact that it would not have *succeeded* in that posture does not permit him to channel that claim into a section 3582 motion instead. To the contrary, this is precisely what the habeas regime prevents.

In sum, Fernandez cannot escape the principle espoused by the majority of our sister circuits and adopted by us today: Challenges to the validity of a conviction—including potential-innocence claims—cannot qualify as "extraordinary and compelling reasons" under section 3582(c)(1)(A) because they can (and therefore must) be brought in a section 2255 petition.

## CONCLUSION

We have considered Fernandez's remaining arguments on appeal and conclude that they are without merit. We REVERSE the district court's order and judgment and REMAND for further proceedings consistent with this opinion and the order issued concurrently herewith.