**UNITED STATES of America, Appellee,**

v.

**Jose ARAUJO et al.,**
**Defendants-Appellants.**

**Nos. 1174, 1182, 1137, Dockets 76–1085, 76–1086, 76–1150.**

United States Court of Appeals, Second Circuit.

Argued June 11, 1976.
Decided July 26, 1976.

Ralph S. Naden, New York City, for appellant Araujo.

Victor J. Herwitz, New York City, for appellant John Doe, a/k/a "Neno".

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society, New York City, on the Brief), for appellant Rivera.

Michael S. Devorkin, Asst. U. S. Atty., New York City (Robert E. Fiske, Jr., U. S. Atty., S. D. N. Y., Frederick T. Davis, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FRIENDLY, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Appellants Jose Araujo, Rafael Hichez, a/k/a "Neno", and Jorgita Rivera appeal from judgments of conviction entered in the Southern District of New York after a jury trial before Judge Cooper. Their principal claims of error are that the admission of evidence pertaining to prior criminal activities in which they were not involved deprived them of a fair trial, that certain comments made by the prosecutor and the court were prejudicial, and that the trial judge employed improper criteria in passing sentence. Finding these contentions to be without merit, we affirm.

Appellants were convicted of conspiring to manufacture and sell counterfeit U. S. currency and of related substantive offenses. The Government's proof established the existence of a large-scale scheme to make and distribute $3,000,000 in counterfeit currency and the participation by each of the appellants in this illegal venture. Although the indictment charged a conspiracy occurring "[f]rom or about the 1st day of January, 1975", the Government was permitted, over objection, to introduce testimony that five of the conspirators other than appellants had in November and December 1974, as well as in January 1975, purchased counterfeit money and passed it to merchants in the New York metropolitan area. Appellants assert that this evidence was improperly admitted because it did not involve them and because, even if the proof was relevant, its evidentiary value was outweighed by its prejudicial impact. We disagree.

To obtain convictions on the conspiracy count, it was essential that the Government prove two things: (1) the existence of the conspiracy charged, and (2) the participation of each defendant in that conspiracy. *See, e.g., United States v. Steinberg*, 525 F.2d 1126, 1133–34 (2d Cir. 1975), *cert. denied*, —— U.S. ——, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). As to the latter element, proof of criminal acts not involving appellants would be irrelevant. *United States v. DeCicco*, 435 F.2d 478, 483 (2d Cir. 1970). In contrast, proof of the existence of the charged conspiracy is not confined to the acts of the defendants on trial. *United States v. Costello*, 352 F.2d 848, 854 (2d Cir. 1965), *rev'd on other grnds.*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Evidence of the counterfeiting activities prior to the manufacture of the $3,000,000 tended to show the existence of a broad counterfeiting conspiracy, of which the conspiracy charged in the instant indictment was a part. As such, it was admissible. *United States v. Papadakis*, 510 F.2d 287, 294–95 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. Cohen*, 489 F.2d 945, 949 (2d Cir. 1973).

■ Judge Cooper explained to the jury the purpose for which the testimony was admitted. However, at a later point in his charge, he proceeded to obfuscate what had theretofore been reasonably clear by instructing that the jury could consider evidence of prior acts in determining whether "the defendant (sic) acted with guilty knowledge or intent". The relationship between the prior acts of others and the knowledge and intent of appellants somehow escapes us; as undoubtedly it did the jury. Nonetheless, because the evidence was properly admitted for a correctly stated purpose, we see no prejudicial error in this improper instruction which survives appellants' failure to take proper exception thereto.

■ There remains the question of whether the probative value of the prior crimes evidence was "substantially outweighed by the danger of unfair prejudice" to appellants. Fed.R.Ev. 403. Appellants urge that the inflammatory nature of this proof, particularly the descriptions of the bilkings of merchants, requires reversal. Since counterfeiting and bilking go hand in hand, it is difficult to discern the prejudice which is so readily apparent to appellants. In any event, in view of the overwhelming evidence of the existence of the conspiracy charged during the period covered by the indictment, we are not prepared to say that Judge Cooper abused the broad discretion vested in him. *United States v. Ravich*, 421 F.2d 1196, 1204–05 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); *United States v. Harvey*, 526 F.2d 529, 536 (2d Cir. 1975), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).

■ The three conspirators who testified as Government witnesses were hardly model citizens, and defense counsel conducted a vigorous assault upon their credibility. In an attempt to blunt the impact of this attack, the prosecution elicited testimony from the first of these witnesses that the Government had promised to bring his cooperation to the attention of the sentencing judge and that he would be prosecuted if he testified falsely. Appellants contend that this latter testimony constituted an impermissible Government voucher for the witness' credibility. This claim is foreclosed by *United States v. Aloi*, 511 F.2d 585, 597–98 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386, 44 U.S.L.W. 3344 (1975), in which we sustained a prosecutor's reference to a similar agreement as "merely one of many items" that bear upon the question of credibility. *See also United States v. Isaacs*, 493 F.2d 1124, 1165 (7th Cir.) (*per curiam*), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

■ Appellants also assert that two comments made by the court below in its charge improperly bolstered the credibility of the Government's witnesses. In instructing on the weight to be given accomplice testimony, Judge Cooper asked the jury to consider whether these witnesses were merely fabricating a story calculated to make a good impression or whether they were smart enough to know that they were being carefully watched by the judge, prosecutor, and jury for signs of lying. This, appellants contend, implied that both the judge and prosecutor were satisfied that the accomplice testimony was truthful. While it would have been much better to have avoided this instruction, particularly the references to the judge and the prosecution which carried an implicit suggestion that they knew what the truth was and thus were in a position to pounce upon any lie, any harmful effect was dissipated by other instructions. The jury was instructed that accomplice testimony should be viewed with "caution" and "circumspection" and was "inherently suspect". Both before and after the challenged instruction the court told the jury at least four times that it was to be the sole arbiter of credibility, concluding that "it is your estimate of the testimony given by each witness that is controlling and not that advanced by the attorneys or suggested by anybody."

■ In the same portion of his charge, Judge Cooper referred to "the tendency of human beings to lie when confronted with an accusation. You bear that in mind—the

natural instincts of people." Appellants assert that this instruction supplemented the evidence by placing the court's own experience with human nature on the scale against appellants. Because the statement was not objected to below, this claim is not open on appeal. *United States v. Sherman*, 171 F.2d 619, 624 (2d Cir. 1948), *cert. denied*, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949). Nonetheless, we would be remiss if we did not express our disapproval of instructions of this sort. While we do not believe that the quoted language caused error of the magnitude involved in *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), relied upon by appellants, it would be preferable if the trial judge avoided interjecting his own personal views of human nature into the charge.

The court below properly instructed the jury not to allow considerations of potential punishment to influence its verdict. To illustrate the point, Judge Cooper explained:

> [T]ake another criminal case. How do you know what that defendant is and what his background is, a defendant who hasn't taken the stand and against whom you can't hold a thing because he hasn't taken the stand. How do you know who he is?
>
> So you lay off of that because the Judge says it is none of your business.

Appellant Araujo argues that this instruction "quickened the jury's imagination" as to the reasons why he did not take the stand, and therefore constituted a violation of his rights under the Fifth Amendment. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Again despite the fact that these words would have been better left unsaid, reversal is not required, for the language used was not "manifestly intended or . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955); *Davis v. United States*, 357 F.2d 438, 441 (5th Cir.), *cert. denied*, 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966). By the time the

jury heard this statement it had been warned twice that no adverse inference could be drawn from a defendant's failure to testify. Indeed, the challenged language itself indicates that "you can't hold a thing" against a defendant because he has not taken the stand. Moreover, the instruction was not directed at any of the defendants on trial; rather, the court referred to "another criminal case". In short, "[t]he image conveyed was too broad to focus attention on [Araujo's] testimonial silence and invite adverse inferences therefrom." *United States ex rel. D'Ambrosio v. Fay*, 349 F.2d 957, 961 (2d Cir.), *cert. denied*, 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965). Accordingly, the challenged comment, while ill-advised, did not violate Araujo's constitutional rights.

Finally, appellants contend that the court below relied upon improper criteria in determining their sentences. After the jury had returned its verdict, Judge Cooper gave it the following glimpse into the future:

> What do you think is going to happen now? There is going to be a report pursuant to the Court's direction prepared by the Probation Department as to each one of these three. . . .
>
> I know what they did. The evidence was repeated over and over again. . . .
>
> [Now,] I want to know who they are as human beings.
>
> What you have done enables me to send them away . . . *And sure, I'm going to cut off a bit when I come to sentence those who did plead guilty*, and if I believe there has been cooperation, I'll take that into consideration.
>
> . . . . .
>
> I have no idea right now whether they are going to get one year, ten years or what until I get that report. (Emphasis added).

When appellants were sentenced one month later, Rivera and Hichez received heavier prison terms than did those who pleaded guilty and testified for the Government.

Rivera and Hichez urge that the italicized statement reveals a general policy

of penalizing defendants who stand on their right to put the Government to its proof rather than plead guilty. Augmentation of sentence based on this factor is, of course, improper. *United States v. Duffy,* 479 F.2d 1038, 1039 (2d Cir.) (*per curiam*), *cert. denied,* 414 U.S. 978, 94 S.Ct. 299, 38 L.Ed.2d 221 (1973); *Scott v. United States,* 135 U.S. App.D.C. 377, 419 F.2d 264 (1969); *United States v. Jansen,* 475 F.2d 312, 319 (7th Cir.), *cert. denied,* 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973). However, while the phraseology employed by the District Judge was unfortunately broad, his allusion to leniency for "those who did plead guilty" obviously referred to those defendants who pleaded in the instant case and not to a general policy applicable to all defendants. Although admission of guilt does not necessarily indicate contrition, in view of the cooperative attitude of those defendants who did plead, Judge Cooper may well have believed that their pleas demonstrated recognition of fault, "the first step toward rehabilitation . . . ." *United States v. Floyd,* 496 F.2d 982, 989 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974). "A show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial." *United States v. Thompson,* 476 F.2d 1196, 1201 (7th Cir.), *cert. denied,* 414 U.S. 918, 94 S.Ct. 214, 38 L.Ed.2d 154 (1973). *See Floyd, supra. See also* American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.8, at 36–52 (1967).

Judge Cooper's challenged comments were made offhand to the jury, one month prior to sentencing, and concededly before he had arrived at a decision as to the sentences to be meted out. Significantly, the sentencing minutes contain no reference to the fact that appellants did not come clean by pleading guilty. Instead, the sentences imposed appear to have been based almost totally upon the probation report for each defendant. Accordingly, we hold that appellants were not penalized for standing trial.

We have thoroughly reviewed appellants' other assertions of error, including the trial judge's comments and reference to the indictment in describing overt acts and his "sadness" when well-meaning jurors acquit on improper grounds, and find no prejudicial error which mandates reversal. There remains only the contention of appellants that the cumulative effect of the incidents discussed herein deprived them of a fair trial despite the fact that each, standing alone, might not have been prejudiciously erroneous. Under other circumstances, there might be force to this argument. However, in this instance, the Government's case was so formidable that we are not disposed to accept it. The judgments are affirmed.