In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 07-2584 & 07-2585

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TERESA ORSBURN and MICHAEL ORSBURN,

*Defendants-Appellants*.

_____

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:06 CR 60—**Rudy Lozano**, *Judge*.

_____

ARGUED APRIL 10, 2008—DECIDED MAY 8, 2008

_____

Before EASTERBROOK, *Chief Judge*, and ROVNER and
SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In 1998 Michael Orsburn
was elected Trustee of Keener Township in Jasper County,
Indiana. The Trustee administers funds for emergency
services and relief of the poor. Michael appointed his
wife, Teresa Orsburn, to keep records and write checks.
The Orsburns were poor custodians of the public's funds.
Between 2000 and 2004 they embezzled about $310,000,
roughly 15% of the money that passed through their hands.
Teresa wrote checks to Michael using erasable ink; after

they had been deposited in Michael's personal checking account and the cancelled checks mailed back to the Trustee's office, Teresa replaced Michael's name with that of a more plausible recipient.

Teresa pleaded guilty to mail fraud and tax evasion (the Orsburns did not pay income tax on the stolen money). Michael pleaded not guilty to the same crimes, blaming everything on Teresa, but was convicted by a jury. Michael insists that his crime (if any) was theft rather than mail fraud. But the checks were mailed, and Teresa wrote in new payees after the mailing in an effort to conceal what she had done. Given decisions such as *Schmuck v. United States*, 489 U.S. 705 (1989), there is no problem applying 18 U.S.C. §1341 to this scheme. The evidence was sufficient. All of the money was deposited into Michael's personal checking account, and although Teresa testified that she forged Michael's signature so that they could spend their ill-got gains, the jury did not have to believe that Michael was in the dark. The embezzled funds were roughly twice the couple's legitimate income, and they spent it all. Michael could hardly avoid noticing this sudden improvement in the couple's fortunes even if he never looked at bank statements.

Both Orsburns were sentenced to 135 months' imprisonment and ordered to make restitution. Teresa's sentence would have been lower than Michael's, given her guilty plea, but she testified at Michael's trial and supported his contention that she alone had carried out the scheme and that he was ignorant. The jury disbelieved her, and so did the judge, who added two levels to her Guidelines calculation for obstruction of justice and rescinded the discount that usually goes with guilty pleas. Michael likewise received an enhancement for his

perjury at trial. These decisions are well supported, for the same reason that the evidence was quite enough to convict Michael.

But 135-month sentences are unusually high for embezzlers. To see this, suppose the Orsburns had been prosecuted under §666(a)(1)(A), which makes it a crime to steal $5,000 or more from any public agency or jurisdiction that receives $10,000 or more annually from the federal government. Appendix A to the Sentencing Guidelines says that U.S.S.G. §2B1.1 applies to a conviction under §666(a)(1)(A), the subsection covering simple theft by public officials (i.e., no bribes or kickbacks). The base offense level is 6, and stealing more than $200,000 but less than $400,000 adds 12 more levels. Obstruction of justice contributes 2, and the use of erasable ink to make changes after the checks had been paid might have been deemed a "sophisticated means" that would add a further 2 levels. Because the Orsburns abused the public trust they held, §3B1.3 supplies 2 more levels. Adding 1 for the tax offenses under the grouping rules, see U.S.S.G. §3D1.4, would produce a total offense level of 25, with a range of 57 to 71 months for these first offenders.

The district court set the Orsburns' offense level at 32 rather than 25, which led to a recommended sentence in the range 121 to 151 months. Section 2B1.1 yields a range that high only for persons who misappropriate more than $20 million. The Orsburns' extra 7 levels come from using U.S.S.G. §2C1.1 rather than §2B1.1. Guideline 2C1.1 starts with a base offense level of 14 for public officials (12 for everyone else). That's 8 offense levels more than §2B1.1; another 4 came from §2C1.1(b)(3), which provide that addition if the public official held a "high-level decision-making or sensitive position". These

extra 12 levels would be offset by 5: the 2-level enhancement for sophisticated means, the 2 levels from §3B1.3, and the 1 level from the grouping rules all do not apply under §2C1.1.

According to the prosecutor, §2C1.1 is the appropriate guideline because the Orsburns were convicted of mail fraud rather than theft by a public employee. Guideline 2C1.1 bears the caption: "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions". The indictment charging the Orsburns with mail fraud, in violation of 18 U.S.C. §1341, included a reference to 18 U.S.C. §1346, which says: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." This brings the Orsburns' crime within the caption of §2C1.1, the argument concludes.

It takes more than citing §1346 to make a scheme an intangible-rights fraud. Section 1346 is a definitional clause, not a separate crime, and this definition is not necessary to the Orsburns' conviction. They stole money from their employer. The intangible-rights gloss on §1341 was devised to deal with people who took cash from third parties (via bribes or kickbacks). *United States v. Holzer*, 816 F.2d 304 (7th Cir. 1987), supplies a good example. Judge Holzer accepted bribes from litigants. What he took from his employer, the state's judicial system, was the honest adjudication service that the public thought it was purchasing in exchange for his salary. This is how the Supreme Court understood the honest-services theory in *McNally v. United States*, 483 U.S. 350 (1987),

which held that §1341 applies only to a person who obtains money or other tangible property from the scheme's victim.

Section 1346 was added to the Criminal Code in 1988 to equate a deprivation of honest services with deprivation of money or property. If the Orsburns had been prosecuted under §1341 after *McNally*, and before §1346 became effective, they would have been convicted, because Keener Township lost most than $300,000. See *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). If what the Orsburns did is an honest-services fraud, then every violation of §1341 by an employee or fiduciary is honest-services fraud. That's not how *McNally* and many opinions before and since have understood the relation between tangible and intangible losses. See, e.g., *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998).

Let this pass. The caption of §2C1.1 says that honest-services frauds come within that section, but not (necessarily) that *all* honest-services frauds do so. The phrase "Deprivation of the Intangible Right to Honest Services of Public Officials" is part of a list and best understood in light of its companions (bribery, extortion, and interference with governmental functions). Cf. *Begay v. United States*, No. 06-11543 (U.S. Apr. 16, 2008). True enough, the phrase *could* be independent of the others in the caption, but the Sentencing Commission has told us that it should not be seen that way. The Background section of the Commentary following §2C1.1 begins:

> This section applies to a person who offers or gives a bribe for a corrupt purpose, such as inducing a public official to participate in a fraud or to influence such individual's official actions, or to a public official who solicits or accepts such a

> bribe. The object and nature of a bribe may vary widely from case to case. . . . Consequently, a guideline for the offense must be designed to cover diverse situations.

In other words, the caption of §2C1.1 (like the section's substantive content) is designed to include the many kinds of bribery, and honest-services fraud can be one of those variants. But an honest-services fraud that does not include bribery or any closely related offense is outside the scope of §2C1.1.

What may be said for the prosecutor's position is that §2B1.1 does not provide an enhancement when the embezzler is a public official; §2C1.1, by contrast, adds 2 to the base offense level when the offender is a public official, and this corresponds to the accepted view that misuse of public office is a good reason to enhance a sentence. (Extra punishment may be necessary to achieve deterrence, as public agencies often employ lax accounting and so are less likely to catch chiselers.) It does not follow, however, that the bribery guideline should be applied to embezzlement. Section 3B1.3 makes up for what's omitted from §2B1.1 by adding 2 levels when the crime entails abuse of trust. What's more, judges are free after *Booker* to sentence above a Guideline range in order to deal with considerations that a particular Guideline omits or that the judge esteems differently from the Sentencing Commission.

The best way to treat similar situations alike—and thus to avoid unwarranted disparities in sentencing, see 18 U.S.C. §3553(a)(6); *United States v. Boscarino*, 437 F.3d 634 (7th Cir. 2006)—is to start with the right Guideline and then make adjustments at the margin. Starting with the right Guideline is essential, see *Gall v. United States*,

128 S. Ct. 586, 596–97 (2007), independent of any concern about disparities. Giving the Orsburns sentences apt for bribe-payers or bribe-takers would produce an unwarranted disparity. They should be classed with other embezzlers, with a potential for a higher sentence on account of their public positions if the district judge deems the adjustment under §3B1.3 inadequate.

The convictions are affirmed, but the sentences are vacated, and the cases are remanded for resentencing consistent with this opinion.