23-6344-cr
*United States v. Trasacco*

# United States Court of Appeals
# For the Second Circuit

August Term 2023
Argued: April 19, 2024
Decided: September 26, 2024

No. 23-6344-cr

UNITED STATES OF AMERICA

*Appellee,*

*v.*

MICHAEL DIMASSA, LAUREN KNOX, JOHN BERNARDO,

*Defendants,*

JOHN TRASACCO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Connecticut
No. 3:22-cr-33-1, Omar A. Williams, *Judge.*

1

Before: Parker, Lohier, and Nathan, *Circuit Judges*.

Defendant-Appellant John Trasacco appeals from a judgment of the United States District Court for the District of Connecticut (Williams, *J.*) convicting him, after a jury trial, of wire fraud and conspiracy to commit wire fraud arising from a scheme to defraud the City of West Haven, Connecticut of COVID-19 relief funds. On appeal, Trasacco challenges his sentence of 96 months' imprisonment as substantively unreasonable, the sufficiency of the evidence against him, and the district court's evidentiary rulings. We conclude that none of Trasacco's challenges prevail. Accordingly, we **AFFIRM**.

Judge Parker dissents in a separate opinion.

———

TRACY HAYES (Andrew P. Giering, Lillian Odongo, Assistant Federal Defenders, *on the brief*), Assistant Federal Defender, *for* Terence S. Ward, Federal Defender, District of Connecticut, Hartford, CT, *for Defendant-Appellant*.

RAYMOND F. MILLER (Conor M. Reardon, Assistant United States Attorney, *on the brief*), Assistant United States Attorney, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee*.

———

NATHAN, *Circuit Judge*:

This case arises from a scheme to misappropriate public funds designated to provide relief to residents of West Haven, Connecticut during the COVID-19 pandemic. Defendant-Appellant John Trasacco was one of four co-defendants charged with stealing relief funds. Trasacco's co-defendants—John Bernardo, Lauren DiMassa, and Michael DiMassa—each pled guilty. Only Trasacco exercised his right to a jury trial.

At trial, the Government introduced evidence of a fraudulent scheme spearheaded by Trasacco in 2021 and facilitated by Michael DiMassa, who was at the time a Connecticut state representative tasked with overseeing the distribution of relief funds in West Haven. With DiMassa's assistance, Trasacco charged the City of West Haven for COVID-19-related equipment and services that were never requested and never delivered. In total, West Haven paid Trasacco over $400,000 for these fraudulent invoices. For this conduct, the jury found Trasacco guilty of wire fraud and conspiracy to commit wire fraud, and the district court sentenced him to 96 months' imprisonment.

On appeal, Trasacco challenges the sentence as substantively unreasonable, the district court's evidentiary rulings, and the sufficiency of the evidence against him. We conclude that Trasacco's challenges are meritless. Accordingly, we **AFFIRM** the judgment of the district court.

3

# BACKGROUND

### I.     Facts

Between January and November 2021, Defendant-Appellant John Trasacco conspired with Michael DiMassa, then an Administrative Assistant to the City Council and member of the Connecticut House of Representatives, to defraud the City of West Haven of COVID-19 relief funds. At the time, DiMassa had been tasked with overseeing the distribution of relief funds by approving invoices requesting payment from the City of West Haven for services rendered to the City. Abusing that authority, DiMassa fraudulently approved payments totaling $431,982 in relief funds in two schemes involving entities controlled by Trasacco: L&H Company, LLC (L&H) and JIL Sanitation Solutions, LLC (JIL). These payments, which Trasacco received, were marked for COVID-related goods and services that were never requested and never delivered.

In the first scheme, Trasacco provided DiMassa with invoices from L&H reflecting orders for masks and protective screens. The problem? The City of West Haven had never ordered equipment from L&H and Trasacco never furnished equipment of any kind. Instead, DiMassa used those invoices to procure checks from the City, which he would then pass on to Trasacco. Trasacco pocketed all of the money West Haven paid to L&H by depositing the checks into an account he solely controlled, although Trasacco rewarded DiMassa with cash kickbacks on several occasions. In total, Trasacco stole over $240,000 from West Haven through the L&H scheme.

Eventually, the pair abandoned the L&H scheme after DiMassa realized that the payment of hundreds of thousands of dollars to one

4

company for items neither ordered nor received by West Haven "was going to stick out at some point." Gov't App'x at 672. So Trasacco proposed another scheme, this time involving his company JIL. The second scheme was not unlike the first. Whereas L&H purportedly provided protective equipment, JIL was to provide "UV Sanitation" services for municipal buildings. In September 2021, Trasacco emailed DiMassa an invoice from JIL in the amount of $184,019, listing multiple West Haven municipal sites for cleaning. DiMassa then arranged to have West Haven issue a check for that amount and delivered the check to Trasacco. But JIL never provided sanitation services to any of the listed municipal sites. In fact, according to city officials, some of the buildings listed on the invoice had been vacant for years.

## II.     Procedural History

In February 2022, a grand jury returned a multi-count indictment charging Trasacco, Michael DiMassa, Lauren DiMassa, and John Bernardo with fraud crimes. Trasacco was charged on two counts, each of which also named Michael DiMassa. Count One charged them with conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. Count Two charged them with wire fraud in violation of 18 U.S.C. § 1343. After each of his co-defendants pled guilty, Trasacco proceeded to a jury trial in which DiMassa testified as a cooperator.

The jury convicted Trasacco on both counts. Trasacco then moved for judgment of acquittal and for a new trial, making many of the same arguments he raises on appeal. The district court (Williams, J.) denied both motions. *See United States v. Trasacco*, 2023 WL 2758300

(D. Conn. Apr. 2, 2023).  Relevant here, the court first rejected Trasacco's sufficiency of the evidence challenges after surveying the evidence put forth by the Government at trial and concluded that "[i]n all, the record makes clear that the jury was presented with more than enough evidence to support their reasonable conclusion that Mr. Trasacco committed wire fraud."  *Id*. at *8.  The court then rejected Trasacco's various evidentiary challenges, concluding that none amounted to "unfair prejudice warrant[ing] a new trial."  *Id*. at *12–16.

The district court subsequently sentenced Trasacco to 96 months in prison followed by 60 months of supervised release.  The 96 months' sentence fell above Trasacco's Guidelines range of 33 to 41 months' imprisonment.  The court also required Trasacco to pay $143,994 in restitution to the City of West Haven.  The court explained that it did not impose joint and several liability on Trasacco and DiMassa as to the full amount ($411,982) because it believed Trasacco was "likely to pay no restitution whatsoever," which would leave DiMassa with the entire liability.  Gov't App'x at 1313.  Relevant to Trasacco's sentencing challenge discussed below, Trasacco's co-defendants who pled guilty received shorter sentences.  Bernardo was sentenced to 13 months, Lauren DiMassa to 6 months, and Michael DiMassa to 27 months.

Trasacco timely appealed.

## DISCUSSION

Trasacco raises three challenges to the district court's judgment.  He objects that (1) his 96 months' sentence is substantively unreasonable; (2) the district court erred in its evidentiary rulings;

6

and (3) the evidence presented is insufficient to support his conviction. We disagree.

## I.  Sentencing Challenge

Trasacco first challenges his sentence as substantively unreasonable. It is not.

"A sentence is substantively unreasonable when it cannot be located within the range of permissible decisions, because it is shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Osuba*, 67 F.4th 56, 68 (2d Cir. 2023) (quotation marks omitted). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime," *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc), and our substantive review of a sentence is "akin to review under an abuse of discretion standard," *United States v. Park*, 758 F.3d 193, 199 (2d Cir. 2014) (quotation marks omitted). The Court's substantive reasonableness review "focuses on a district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a)." *United States v. Matta*, 777 F.3d 116, 124 (2d Cir. 2015) (quotation marks omitted).

To be sure, the district court's 96-month sentence fell well above Trasacco's 33–41-month Guidelines range. Even so, we conclude that the district court's detailed explanation of Trasacco's above-Guidelines sentence places it within the "range of permissible decisions." *Osuba*, 67 F.4th at 68. At sentencing, the district court first underscored the impact of COVID-19 on the country, and the severity of stealing relief funds "by fraudulently claiming to be providing the goods and services that people in the midst of a pandemic desperately

7

needed." Gov't App'x at 1308. The court then observed that Trasacco had "derived significant financial gains from [his] crimes," yet "filed no tax returns for L&H or for JIL from 2017 through 2021" and "paid no personal federal income taxes" for several years in that timeframe. *Id.* at 1310. Finally, the district court accorded weight to the deterrence factor, expressing his "intent to discourage future criminal conduct from this defendant who already has been sentenced to seven years in jail for separate violent crimes." *Id.* at 1314. Giving due deference to the weight afforded to these factors by the sentencing judge, we conclude that the district court's decision to impose an above-Guidelines sentence in this case was within its discretion. *See Cavera*, 550 F.3d at 190.

Nonetheless, Trasacco challenges the sentence as substantively unreasonable based on his view that the district court imposed the 96-month sentence as punishment for his refusal to plead guilty. As evidence of the alleged penalty, Trasacco points to the fact that his three co-defendants—who pled guilty before trial and paid restitution—received more lenient sentences. We are unpersuaded for several reasons.

First, the district court confirmed expressly that it would not augment Trasacco's sentence based on his decision to go to trial. Our Court has previously remanded for resentencing when faced with an ambiguous record that "contains no unequivocal statement by the judge as to whether [the defendant's] decision to go to trial was or was not considered in imposing sentence." *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir. 1985). But in this case, the sentencing judge made an unequivocal statement at sentencing that Trasacco "in no

8

way will be punished for exercising his constitutional right to a trial and to forcing the government to prove its case beyond a reasonable doubt." Gov't App'x at 1286. He further reiterated that "[w]hile [Trasacco] will not receive a greater sentence for failing to accept responsibility for his crimes, . . . he also will not receive the benefits of a lighter sentence that the Court would have considered had Mr. Trasacco accepted responsibility[.]" *Id.* at 1273–74. In other words, the district court confirmed that Trasacco's decision to proceed to trial would neither increase nor decrease his sentence. We therefore find in the record no express statements indicating "that the court sought to penalize [Trasacco] for exercising his right to put the government to its proof." *United States v. Tracy*, 12 F.3d 1186, 1202 (2d Cir. 1993). To the contrary, the express statements by the district court affirmed that the sentence was not based on a trial penalty.

Nor are we persuaded by Trasacco's assertion that the more lenient sentences received by his co-defendants—who all pled guilty—are evidence of an improper trial penalty. At the outset, this Court has made clear that "[t]he law does not require a district court to consider or explain sentencing disparities among codefendants." *United States v. Barrett*, 102 F.4th 60, 97 (2d Cir. 2024) (quoting *United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020)) (cleaned up). But "we may remand cases where a defendant credibly argues that the disparity in sentences" between "defendants with similar records who have been found guilty of similar conduct" "has *no stated or apparent* explanation." *United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006) (emphasis added) (citing 18 U.S.C. § 3553(a)(6)). We explained in the same breath, however, that no such problem arises

9

where "a reasonable explanation of the different sentences . . . is readily apparent." *Id.*

The district court's reasons for imposing different sentences in this case are readily apparent. As previously discussed, the district court took account of Trasacco's unique criminal and financial history in fashioning its sentence. The court further explained that "Mr. Trasacco is distinguishable . . . from the other codefendants" because "[e]ach other codefendant accepted responsibility and did so relatively quickly." Gov't App'x at 1286; *see also id.* at 1273–74 (noting that Trasacco "will not receive the benefits of a lighter sentence that the Court would have considered had [he] accepted responsibility").

That statement in no way rebuts the district court's unequivocal statement that Trasacco would not be punished for exercising his trial right. Trasacco objects that "plea discounts and trial penalties are simply two sides of the same coin," Reply Br. at 11, but our Court has expressly rejected that argument.[1] We have long held that a district court may properly treat a guilty plea as a "recognition of fault" and that "[a] show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of

---

[1] The dissent makes the same error, *see* Dissent Op. at 2-4, 8-9, 11, citing *United States v. Cruz*, 977 F.2d 732, 734 (2d Cir. 1992), in support of its position, *see* Dissent Op. at 2, 4. But *Cruz* recognizes what the dissent overlooks: that "withholding . . . leniency" for defendants who have declined to accept responsibility does not give rise to an impermissible punishment. *See Cruz*, 977 F.2d at 734. *Cruz* is also readily distinguishable, since it involved a district judge who apparently made good on a pretrial threat to impose a "maximum" sentence "if the Judge determined, after trial, that the defendant lacked what the Judge considered 'a good defense.'" *Id*. at 733-34. The district court's remarks in Trasacco's case are more akin to "point[ing] out that the acceptance of responsibility 'discount' . . . might well be unavailable if the defendant stood trial." *Id.* at 734. Thus, whereas vacatur was warranted in *Cruz*, it is not warranted here.

10

penalizing those who elect to stand trial." *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976) (quotation marks omitted). And just recently, in reviewing a sentence reduction request, we held that "there is nothing extraordinary . . . about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government." *United States v. Fernandez*, 104 F.4th 420, 429 (2d Cir. 2024) (quotation marks omitted). The district court therefore did not err when it distinguished Trasacco from his co-defendants by referencing his failure to accept responsibility. Contrary to Trasacco's argument, those statements do not permit the inference that the district court actually imposed a trial penalty. Denying Trasacco the credit his co-defendants received for pleading guilty is thus not an impermissible trial penalty under our precedents.

To supplement his argument, Trasacco highlights the disparity between his 96-month sentence and Michael DiMassa's 27-month sentence, noting DiMassa's significant involvement in the L&H and JIL schemes and the abuse of his position as a state representative. There is no question that DiMassa breached his position of public trust to facilitate the fraudulent schemes. But DiMassa also pled guilty and cooperated with the Government, providing critical testimony at Trasacco's trial. The dissent is, therefore, wrong when it asserts that "the biggest discernable difference between Trasacco and DiMassa was that Trasacco proceeded to trial, and DiMassa did not." Dissent Op. at 8. The biggest discernable difference is that DiMassa actively cooperated against Trasacco. And "[t]his Court . . . has recognized that a reasonable explanation for a sentencing disparity was readily apparent where there were varying degrees of . . .

11

cooperation between the various defendants, and where . . . co-defendants cooperated and pled guilty." *Fernandez*, 104 F.4th at 428 (cleaned up). We have repeatedly upheld this principle and see no reason to depart from it here. *See, e.g.*, *United States v. Gahagen*, 44 F.4th 99, 112–13 (2d Cir. 2022); *United States v. Menendez*, 600 F.3d 263, 269–70 (2d Cir. 2010); *Ebbers*, 458 F.3d at 129.

As further evidence that the district court imposed an illicit trial penalty, Trasacco and the dissent point to the court's decision to remand him into custody immediately after sentencing. This argument is unavailing. The district court provided extensive reasoning for why an immediate remand was appropriate in this case, including that it would be unfair to allow Trasacco to further delay serving his sentence while his co-defendants, all of whom had accepted responsibility, were soon to begin serving their time.[2] The court also concluded that Trasacco had not adequately rebutted the presumption that he posed a danger to the community or a risk of flight, especially in light of his significant sentence and lack of financial assets. And it expressly rejected Trasacco's arguments that he required additional time to get his affairs in order, since he had had four months since the date of conviction to make any necessary preparations, the parties themselves had proposed the sentencing date, and it was unclear exactly what affairs Trasacco even needed to

---

[2] Because the dissent credits this argument by selectively quoting the district court, it is worth quoting the district court in full on this point: "Finally, the Court notes the deterrent effect both specifically and generally of an immediate remand to custody today, though it would be eroded by delaying the start of your sentence and it would serve as an injustice as to the other lesser codefendants who have accepted responsibility and who are slated to begin their period of incarceration, therefore the defendant is ordered remanded . . . ." Gov't App'x at 1322-23.

12

get in order since he was unemployed and, once again, had no assets. Faced with this record evidence, it is difficult to conclude that the district court's decision to immediately remand Trasacco was anything but a reasoned judgment based on his unique circumstances, and not the reflection of an illegal trial tax.

Finally, Trasacco asserts that, compounding the alleged trial penalty, the district court also imposed the 96-month sentence to penalize him for his inability to pay restitution. But here again, the district court stated in unequivocal terms that Trasacco "will not receive a greater sentence . . . for any inability to pay restitution," Gov't App'x at 1273, and there is no evidence in the record to suggest otherwise. To the extent that Trasacco's objection is to the district court's adjoined statement that he would also "not receive the benefits of a lighter sentence that the Court would have considered had Mr. Trasacco . . . paid upfront restitution," *id.* at 1273-74, this opinion has already addressed it. As we have held, "[a] show of lenience to those who exhibit contrition"—e.g., by pleading guilty or paying upfront restitution—"does not carry a corollary that the Judge indulges a policy of penalizing those" who elect not to accept responsibility. *Araujo*, 539 F.2d at 292; *see* U.S.S.G. § 3E1.1, Application Notes 1(C) (listing "voluntary payment of restitution" as an "appropriate consideration[]" in determining whether a defendant demonstrates acceptance of responsibility).

We accordingly conclude that Trasacco's sentence is substantively reasonable.

## II.     Evidentiary Challenges

Trasacco also argues that he is entitled to a new trial because

the Government improperly elicited testimony related to gang involvement and previous time in prison. These challenges fail as well.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action," but relevant evidence may be excluded if "its probative value is substantially outweighed" by a risk of (among other things) "unfair prejudice." Fed. R. Evid. 401, 403.

We review a district court's evidentiary rulings for abuse of discretion and "will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018) (quotation marks omitted). The Court owes "great deference to a district court in ruling as to the relevancy and unfair prejudice of proffered evidence, mindful that it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006) (quotation marks omitted). Indeed, "[w]hen reviewing a district court's Rule 403 determination, we generally maximize the evidence's probative value and minimize its prejudicial effect." *United States v. McPartland*, 81 F.4th 101, 114 (2d Cir. 2023) (cleaned up). And "[e]ven if a decision was manifestly erroneous, we will affirm if the error was harmless." *Litvak*, 889 F.3d at 67 (quotation marks omitted).

**A. Doma-Related Testimony**

Trasacco contends that the district court abused its discretion

14

when it admitted testimony suggesting that he had ties to organized crime. Specifically, the Government elicited testimony that DiMassa received cash kickbacks from Trasacco at an Italian restaurant in Branford, Connecticut called Doma where Trasacco and a group of regular customers—including two individuals known as John Taddei and Johnny Mop[3]—congregated. We discern no error, let alone an abuse of discretion, in the district court's determination that the testimony at issue does not rise to "the requisite level of prejudice." *Trasacco*, 2023 WL 2758300, at *12. Doma is where Trasacco first met DiMassa, where Trasacco gave DiMassa the fraudulent invoices, and where DiMassa delivered the checks to Trasacco in return. And after Trasacco proposed the JIL scheme, he singled out Taddei and Mop to "do some kind of walk-through of buildings." Gov't App'x at 685-86. The Doma-related testimony thus "provide[d] background for the events alleged in the indictment," and "enable[d] the jury to understand the complete story of the crimes charged" and "how the illegal relationship between [coconspirators] developed." *United States v. Reifler*, 446 F.3d 65, 91-92 (2d Cir. 2006) (quotation marks omitted).

Trasacco also argues that the Government improperly referred to him and the restaurant patrons as members of a "gang." *See* Gov't App'x at 703. Reviewing the record as a whole, however, we conclude that the Government's stray reference to "the Doma gang" in this context was harmless in light of the significant evidence of Trasacco's

---

[3] As the district court noted, "Johnny Mop" is spelled differently in the trial transcript and in the government's briefing. *See Trasacco*, 2023 WL 2758300, at *11 n.9. Like the district court, we have adopted the spelling used in Trasacco's briefing for the purposes of this opinion. *See id.*

guilt and the fact that the district court sustained Trasacco's objection to the word and ultimately instructed the jury to ignore it. *See Trasacco*, 2023 WL 2758300, at *12.

### B. Prior Conviction Testimony

Trasacco also argues that the district court improperly admitted Michael DiMassa's testimony that Trasacco had volunteered to DiMassa that he had "been to prison in the past." Gov't App'x at 591. In our view, however, the testimony was admissible and probative because it was illustrative of Trasacco's efforts to intimidate DiMassa, helped explain the relationship between the two men, and shed light on their motives for engaging in the fraudulent scheme. *See* Fed. R. Evid. 803(3), 404(b)(2); *see also Trasacco*, 2023 WL 2758300, at *13 (finding that "the statement . . . was directly relevant to Mr. DiMassa's fear and motivation in continuing to commit the fraud involving Mr. Trasacco"). Here too, then, the testimony at issue was admissible because it helped to explain how the co-conspirators' "illegal relationship . . . developed." *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (quotation marks omitted).

Trasacco objects that the prior convictions testimony breached the Government's promise to avoid introducing evidence of prior convictions except for impeachment and therefore denied him a fair trial. But Trasacco has not met his "heavy burden" of showing that the limited reference to incarceration was "so severe and significant as to result in the denial of [his] right to a fair trial." *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993).

We therefore affirm the district court's denial of Trasacco's motion for a new trial.

16

## III.     Sufficiency of the Evidence

Lastly, we reject Trasacco's sufficiency of the evidence challenges. Although we consider these challenges *de novo*, Trasacco "face[s] a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (quotation marks omitted). Specifically, when reviewing the sufficiency of the evidence, "we must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (quotation marks omitted). "We will sustain the jury's verdict if *any* rational tier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pierce*, 785 F.3d 832, 838 (2d Cir. 2015) (quotation marks omitted).

On appeal, Trasacco raises sufficiency of the evidence challenges to both counts of conviction—wire fraud and conspiracy to commit wire fraud. 18 U.S.C. § 1343 criminalizes the use of interstate wires for "any scheme or artifice to defraud, or for obtaining money or money or property by means of false or fraudulent pretenses, representations, or promises." Under 18 U.S.C. § 1349, "[a]ny person who attempts or conspires to commit [wire fraud] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Proof of such a conspiracy requires a showing that the defendant agreed with another to commit wire fraud and knowingly engaged in the conspiracy with the intent to commit that offense. *See United States*

17

*v. Khalupsky*, 5 F.4th 279, 288 (2d Cir. 2021).

Viewing the evidence in the light most favorable to the Government, we agree with the district court that the jury was presented with "more than enough" evidence to support the verdict as to both counts. *Trasacco*, 2023 WL 2758300, at *8. At trial, the Government introduced evidence of Trasacco's schemes to invoice the City of West Haven for COVID-19 equipment that he did not deliver and sanitation services that he did not perform. Trasacco contends that, to the contrary, he attempted to fulfill his contractual obligations and thus could not have been involved in a scheme to defraud West Haven. But drawing all inferences in the Government's favor, we conclude that a rational juror could credit the testimony of Michael DiMassa and other West Haven officials that the quantity of equipment Trasacco delivered fell materially short of what he was paid to deliver. DiMassa testified about how he would submit untruthful vouchers in support of fake invoices when, all along, there had never been discussions with West Haven's Board of Education about the purchase of COVID-19-related protective equipment. And West Haven officials corroborated the testimony that various City departments had never ordered or received the invoiced goods and services, and that buildings on the JIL invoice had actually been out of commission. The Government introduced further testimony at trial that after learning of the federal investigation into his scheme, Trasacco sought to conceal his fraud and make it appear that he attempted to comply with his contractual obligations by contacting sanitation subcontractors from whom he falsely claimed to have purchased COVID-19-related equipment.

18

As to the conspiracy conviction, Trasacco contends that the Government failed to prove that he and DiMassa entered into any agreement to defraud the City. Instead, Trasacco claims, DiMassa was committed to the belief that L&H and JIL were legitimate businesses that had contracted with the City of West Haven. This theory is belied by the evidence presented at trial, which supports the jury's finding that DiMassa agreed to participate in a fraudulent scheme. For example, DiMassa himself testified that the very first invoice—which neither he nor anyone else from the City requested—reflected a "fake transaction" that he sought to conceal. Gov't App'x at 615–20. Despite receiving no product, DiMassa continued to process invoices in the months that followed.

As a fallback argument, Trasacco contends that the evidence shows at best that DiMassa was intimidated into participating in the schemes by Trasacco and thus could not have willingly entered into an agreement to defraud. But the evidence at trial also supports the jury's conclusion that DiMassa's participation in the conspiracy was not the product of duress. *See United States v. Cotto*, 347 F.3d 441, 446–47 (2d Cir. 2003). A rational juror could conclude, for instance, that DiMassa agreed to the schemes in part to pay off his gambling debts.

Finally, as to his substantive wire fraud conviction, Trasacco argues that there was insufficient evidence to link the only charged wire transaction to a fraudulent scheme. We disagree. It is true that Trasacco was charged on the wire fraud count based on an interstate wire transaction involving one of the four checks issued between the City of West Haven and L&H in 2021. But a rational juror could infer from the trial evidence of Trasacco's fraudulent conduct post-dating

19

the charged wire transmission that the wire was intended to further a fraudulent scheme.  *See United States v. Arrogo-Angulo*, 580 F.2d 1137, 1149 (2d Cir. 1978) (reasoning that a defendant's subsequent acts may prove his intent at an earlier time, particularly where they form "a common scheme or design").

Accordingly, we affirm the district court's denial of Trasacco's motions for acquittal and a new trial based on insufficiency of the evidence.

## CONCLUSION

The judgment of the United States District Court for the District of Connecticut is **AFFIRMED**.

BARRINGTON D. PARKER, *Circuit Judge*, dissenting in part:

Defendant John Trasacco was arrested and convicted for his participation in a fraudulent scheme through which he and his codefendants stole relief funds from the Town of West Haven, Connecticut. The funds were intended to ameliorate the effects of the COVID-19 pandemic during a particularly difficult and uncertain time for the town and its residents. I join Parts II and III of the Court's opinion, rejecting Trasacco's challenges to his conviction on evidentiary and sufficiency grounds.

However, I write separately because, in my view, the district court's imposition of a 96-month sentence on Trasacco was substantively unreasonable. The sentence was more than double the top of Trasacco's 33 to 41-month recommended Guidelines range and nearly triple the bottom of that range. In upholding that sentence, the majority discounts what I perceive to be clear signs that the district court punished Trasacco for not accepting responsibility and for exercising his right to proceed to trial. Because I would vacate Trasacco's sentence and remand for resentencing, I respectfully dissent from Part I of the Court's opinion.

District courts are accorded significant deference in fashioning criminal sentences given their "unique factfinding position." *United States v. Bronxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). But it follows from the Sixth Amendment's guarantee of a right to trial that "the

1

augmentation of a sentence based on a defendant's decision to stand on his right to put the Government to its proof rather than plead guilty is clearly improper." *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir. 1985) (cleaned up).

Based on my review of the record, the district court's comments at sentencing, as well as the sentence it imposed, cast sufficient doubt on its rationale for imposing a steep, upward departure on Trasacco so as to require resentencing. We have been clear that where a district court's comments and conduct at sentencing "create[] an unacceptable risk that the sentence was impermissibly enhanced above an otherwise appropriate sentencing norm to penalize the defendant for exercising his constitutional right to stand trial," vacatur is appropriate. *United States v. Cruz*, 977 F.2d 732, 734 (2d Cir. 1992).

At sentencing, the district court scolded that "Mr. Trasacco [was] distinguishable, *and not in a good way*, from the other codefendants. . . [who] accepted responsibility and did so relatively quickly." Gov. App'x at 1286 (emphasis added). It emphasized that Trasacco would "not get the benefit of accepting responsibility" because he had "continue[d] to profess his innocence." *Id.* at 1286, 1314. And the court went on to determine that Trasacco's failure to pay "upfront restitution "merited a longer sentence because he was "unlikely to pay restitution either willfully so or due to a lack of ability." *Id.* at 1388. At that point, Trasacco had not been sentenced

2

and, consequently, was under no obligation to pay restitution.

In opting for a heightened sentence, therefore, the district court expressed its unmistakable displeasure that Trasacco, unlike his codefendants, had not pleaded guilty and had instead gone to trial. What is more, after imposing its sentence on Trasacco, the district court ordered that he be immediately remanded because it "would serve as an injustice as to the other lesser codefendants who ha[d] accepted responsibility" to permit Trasacco to surrender himself to begin his sentence. *Id.* at 1322. This was done notwithstanding the district court's concession that Trasacco had "never [been] brought before this Court on any claim of violating his conditions which is why he was allowed to remain at liberty" prior to sentencing. *Id.* at 1327. The atypically punitive nature of this remand should not escape our attention—particularly given defense counsel's request at sentencing for "just a short period of time" to enable Trasacco to get his affairs in order. *Id.*

The record, I readily concede, reflects valid reasons supporting the district court's decision to deny Trasacco credit for acceptance of responsibility. But the record does not, in my view, justify the court's imposition of a significant upward departure that double counted aggravating factors that were already factored into Trasacco's Guidelines calculations. The district court's rationale for Trasacco's sentence were, at best, reasons not to depart *downward*; but, in my

3

view, they do not justify a significant *upward* departure.

In the face of the district court's remarks, the majority takes solace in its qualification that Trasacco would "in no way [] be punished for exercising his constitutional right to a trial." Maj. Op. at 8-9 (quoting Gov. App'x at 1286). But, as the saying goes, "listen to the words but watch the feet." In cases like this one, where an important constitutional right is at stake, our scrutiny must be more exacting. Where a sentencing court not only departs aggressively from a defendant's Guidelines range, but also imposes a significantly harsher sentence on that defendant than his codefendants for similarly egregious misconduct, it should not be allowed to caveat its way to safety, the deference it is owed notwithstanding.

Despite its disclaimer, I am left with a fixed impression that the district court was displeased that Trasacco did not cooperate or plead guilty and that it factored those considerations into his sentence. In other words, my review finds an "unacceptable risk" that Trasacco's sentence was enhanced, at least in part, due to his decision to go to trial. *See Cruz*, 977 F.2d at 734. The majority's view that the district court "confirmed" that Trasacco's decision to proceed to trial "would neither increase nor decrease his sentence," Maj. Op. at 9, does not persuade me. Looking not simply at what the court said, but at what it actually did, I conclude that the district court singled Trasacco out for elevated punishment because he declined to follow his

4

codefendants' examples.

The district court's inconsistent view of just how repugnant the various codefendants' misconduct was reinforces this conclusion. All parties agreed at sentencing that the monetary loss caused by Trasacco's participation in the fraud was $431,982. No doubt, as the district court observed, this was a substantial sum of money that should have been directed towards "providing the goods and services that people in the midst of a pandemic desperately needed." Gov. App'x at 1308.

But the loss caused by Trasacco's codefendant Michael DiMassa was significantly more—$1,216,541—yet the district court chose to look beyond the scope of his charged fraud and rejected his Guidelines recommendation of 41 to 51 months' imprisonment, instead imposing on him a 27-month sentence.[1]

At the time of the fraud, DiMassa was a Connecticut State Representative and Town of West Haven employee whose position made him responsible for approving the disbursement of COVID-19 relief funds. *See* Maj. Op. at 3. DiMassa admitted to using his control

---

[1] As grounds for his well-below-Guidelines sentence, the district court credited DiMassa's acceptance of responsibility and his representation that he was "committed to payment of restitution"—even though, like Trasacco, DiMassa did not pay any upfront restitution prior to sentencing. Gov. App'x at 1390. The district court further pointed to DiMassa's "extensive valuable trial testimony," which enabled it to "depart in an upward manner when sentencing the most culpable of Mr. DiMassa's codefendants, Mr. Trasacco." *Id.* at 1390-91.

over the pandemic funds that he and his codefendants stole to carry out at least four separate schemes and defraud the Town of approximately three times as much money as Trasacco. Only two of those schemes involved Trasacco.

The district court itself recognized that without DiMassa, "Mr. Trasacco would not have been able to walk into West Haven City Hall and ask the finance director for half a million dollars." Gov. App'x at 1285. At sentencing, the Mayor of West Haven characterized DiMassa as "a liar, a thief, a con-artist and a degenerate gambler" whose orchestration of the fraudulent schemes halted the Town's ongoing economic recovery and resulted in "a negative impact to the bond rating, business and economic development and negative media on the national level. . . [that] will be felt for a generation."[2] *Id.* at 1344, 1346-47. Likewise, the prosecution acknowledged that DiMassa "drove the train" with respect to the charged fraud. *Id.* at 1349. The government went on to condemn DiMassa's behavior as particularly egregious because he was "an elected state representative who betrayed his trust to his constituents and the City and the citizens of West Haven, and was part and parcel of stealing over $1 million of COVID relief money at a time when that money was needed." *Id.* at

---

[2] The mayor further advocated that DiMassa face a maximum sentence because he "was placed in a position of trust and [the charged] theft could not and would not have occurred without him." Gov. App'x at 1347.

1348-49.

Following the logic the district court used in sentencing DiMassa, Trasacco's failure to "accept responsibility" or cooperate with the prosecution could, I suppose, have been grounds for denying him a downward departure. It was not, in my view, adequate justification for lengthening Trasacco's sentence while simultaneously shortening the sentence of a more culpable codefendant. All the more so given our Court's admonition that "a significant departure or variance from the recommended Guidelines range 'should be supported by a more significant justification than a minor one.'" *United States v. Mumuni Saleh*, 946 F.3d 97, 107 (2d Cir. 2019) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).

Surely, the district court was within its discretion to credit DiMassa's and the other codefendants' cooperation and guilty pleas with reduced sentences. *See* Maj. Op. at 9. There is no argument that their sentences were substantively unreasonable because they were too short.[3] But the district court's imposition of a significantly above-

---

[3] The disparity between Trasacco's and DiMassa's sentences is, however, even more conspicuous given the "accepted view that misuse of public office is a good reason to enhance a sentence." *United States v. Orsburn*, 525 F.3d 543, 547 (7th Cir. 2008) (Easterbrook, *J.*); *see also United States v. Stevenson*, 834 F.3d 80, 84 (2d Cir. 2016) ("While a betrayal of public trust is a serious matter in any criminal case, it may be considered greater harm when committed by one who has been elected to office and not simply appointed to a public position."); *United States v. White*, 663 F.3d 1207, 1217 (11th Cir. 2011) ("Because of the critical importance of representative self-government, a guideline that applies to any public official who betrays the public trust does not fully account for the harm that is inflicted when

Guidelines sentence on Trasacco is fundamentally incongruous with its willingness to reward DiMassa with leniency. The biggest discernable difference between Trasacco and DiMassa was that Trasacco proceeded to trial, and DiMassa did not.

The district court's condemnation of Trasacco's failure to pay "upfront restitution" is also troublesome. Before sentencing, the district court instructed the defendants to disclose the existence of funds "immediately available for the payment of any court-ordered restitution" because it was worried the defendants might not make "any genuine attempt" to pay restitution after being sentenced. *See* Dkt. No. 233 at 2-3. At sentencing, because Trasacco "ha[d] not reported any upfront payment of restitution, nor ha[d] he indicated a willingness or ability to pay," the district court stated that he would "not receive the benefits of a lighter sentence that the Court would have considered had [he] accepted responsibility and/or paid upfront restitution."[4] Gov. App'x at 1273-74. Had Trasacco pleaded guilty, the district court indeed could have taken a presentence commitment to pay restitution into consideration in assessing his acceptance of

the trust that the official betrays was conferred on him in an election.") (internal quotations omitted) (alterations adopted).

[4] The district court further contrasted Trasacco with Defendant Bernardo, who provided $20,000 in restitution at the time of his sentencing. The district court stated that Trasacco "does not get the benefit of accepting responsibility of paying upfront restitution as Mr. Bernardo did to a significant degree. . ." Gov. App'x at 1286.

responsibility for the purposes of fashioning his sentence. *See* U.S.S.G. § 3E1.1, Application Note 1(C). But Trasacco did not plead guilty.

Restitution is a mandatory component of a sentence in a case like this one. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). But a defendant electing to go to trial is under no obligation to pay presentencing restitution. *Cf. Paroline v. United States*, 572 U.S. 434, 456 (2014) (While "[t]he primary goal of restitution is remedial or compensatory. . . it also serves punitive purposes."). Viewed in context, I therefore conclude that the district court's criticism of Trasacco's failure to pay upfront restitution was merely another way of communicating its displeasure that Trasacco had not pleaded guilty and, instead, elected to go to trial. I believe the majority is misguided in placing its faith in the district court's promise that Trasacco's failure to pay upfront restitution would not affect his sentence. *See* Maj. Op. at 11-13. I am again unconvinced by this caveat. That the district court could have properly considered a voluntary payment of pretrial restitution for *reducing* Trasacco's sentence had he pleaded guilty does not mean that the absence of upfront restitution was grounds for *increasing* his sentence.

Thus, in my view, the district court's comments created "a sufficient risk that a reasonable observer, hearing or reading the quoted remarks, might infer" that the court was expressing frustration with Trasacco's decision to proceed to trial. *United States*

9

*v. Leung*, 40 F.3d 577, 586-87 (2d Cir. 1994). Certainty is not required; only a sufficient risk is. I believe that is what we have.

***

In reviewing a sentencing challenge on substantive unreasonableness grounds, we look to whether the sentence is "manifestly unjust" or "shock[s] the conscience." *United States v. Rigas*, 583 F.3d 108, 122-24 (2d Cir. 2009). I reach no conclusion as to whether the sentence imposed by the district court on Trasacco shocks the conscience. I am somewhat relieved because I, for one, find it difficult to say with any confidence what is, or should be, considered conscience-shocking when navigating a criminal justice sentencing regime that is arguably among the most punitive in the developed world.[5]

However, based on our "highly contextual standard [of review] that involves some degree of subjectivity," *Mumuni Saleh*, 946 F.3d at 107 (internal quotations omitted), I, for the reasons explained, would hold that Trasacco's sentence was manifestly unjust. Trasacco's decision to proceed to trial simply cannot, in my view, support the

---

[5] *See, e.g.*, Andrew Cohen, *The American 'Punisher's Brain'*, BRENNAN CENTER FOR JUSTICE (May 17, 2021), https://www.brennancenter.org/our-work/analysis-opinion/american-punishers-brain; Michelle Ye Hee Lee, *Yes, U.S. locks people up at a higher rate than any other country*, WASH. POST (July 7, 2015), https://www.washingtonpost.com/news/fact-checker/wp/2015/07/07/yes-u-s-locks-people-up-at-a-higher-rate-than-any-other-country/?_pml=1.

imposition of a sentence 135% longer than his highest-recommended Guidelines sentence. I believe the record before us raises bright red flags. The district court's commentary—namely, its handwringing about Trasacco's failure to "accept responsibility" and pay presentencing restitution—combined with its treatment of Trasacco at sentencing and its selective focus on aggravating factors that were present for all defendants indicate to me the court's frustration that Trasacco refused to spare it the time and effort of a trial. In my view, these red flags are sufficient to warrant vacatur and resentencing.

For these reasons, I respectfully dissent.